Clarence LANDRUM, Jr.

v.

The BOARD OF COMMISSIONERS OF
the ORLEANS LEVEE DISTRICT,
et al.

Civ. A. No. 90–3889.

United States District Court,
E.D. Louisiana.

Jan. 29, 1991.

Joel P. Loeffelholz, Jacobs & Loeffelholz, Emile W. Schneider, Kiefer, Kiefer & Schneider, New Orleans, La., for plaintiff.

Charles H. Hollis, Kullman, Inman, Bee and Downing, New Orleans, La., for defendant.

## RULINGS ON MOTIONS

LIVAUDAIS, District Judge.

This is a civil action filed by the plaintiff, Clarence Landrum, Jr. ("Landrum") against the Board of Commissioners of the Orleans Levee District ("the Levee Board"), Methodist Health System Foundation ("Methodist"), Laboratory Specialists, Inc. ("LSI"), American Drug Screens, Inc. ("ADS"), Patricia Pizzo ("Pizzo"), and the various insurers of each which are given fictitious names in plaintiff's petition. The suit was filed in state court and removed to federal court. The plaintiff unsuccessfully sought remand.

Landrum was employed by the Levee Board as a Police Major of the Levee Board Police Department. On or about August 31, 1989, while in the course and scope of his employment, Landrum was involved in an automobile accident. The Levee Board advised that he would have to provide a urine and blood sample at Methodist to determine whether he had used controlled substances or alcohol. He provided the samples to Methodist, who then transmitted the samples to LSI, a corporation whose principal place of business is Louisiana, but who is a subsidiary of ADS, which is located in Oklahoma. LSI published a report to Landrum's employer which stated that his urine sample indicated that he had used marijuana, an illegal controlled substance.

Plaintiff Landrum offered to give another sample, which was also transmitted to LSI. LSI published another report which stated that Landrum's urine indicated that he had used marijuana between the time he gave the first sample and the second sample, a period of one week. The Levee Board required Landrum to give up his police commission and to report to a physician at the Methodist psychiatric pavilion. Plaintiff did appear and gave another sample, which he alleges did not indicate that he used marijuana. Landrum was suspended from his position. He appealed his suspension to the Civil Service Commission. Pizzo testified at the administrative hearing as an expert in the field of forensic toxicology. Plaintiff was discharged from his position and subsequently filed this suit.

The following motions are presently before this Court:

(1) The Motion of the Orleans Levee District Board ("the Levee Board") to Strike the Request for Jury Trial;

(2) The Motion of ADS to Dismiss the Second Amended Complaint pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(6) for lack of personal jurisdiction, for failure to state a claim under the Fair Credit Reporting Act, for failure to state a claim under the Louisiana Unfair Trade Practices Act and for failure to state claims for negligent defamation and invasion of privacy;

(3) The Motion of the Levee Board for Partial Dismissal for failure to state a claim under the Fair Credit Reporting Act and for failure to state a claim under the Louisiana Unfair Trade Practices Act. These motions shall be addressed *seriatim.*

### Motion to Strike Jury

■ The Levee Board has filed a motion to strike the plaintiff's request for a jury trial against it because Louisiana law prohibits trial by jury against any political subdivision of the state. LSA–R.S. 13:5105 provides that "No suit against the state or a state agency or political subdivision shall be tried by a jury." The plaintiff argues that this statute is procedural and that under the procedural rules which apply in federal court, plaintiff is allowed to have a jury trial against the Levee Board.

Under the jurisprudence, the plaintiff is correct. The court in *Carter v. City of New Orleans*, 327 So.2d 488 (La.App. 4th Cir.1976) held that whether or not a case is triable to a jury or judge is procedural, stating:

> We believe it clear that trial by jury or by judge is a means or mode of proceeding by which a legal right is enforced; it is the machinery, as distinguished from its product, the judgment. Our Louisiana jurisprudence is to the effect that the provisions of R.S. 13:5104, prohibiting jury trials in suits against the state or other public bodies, is a procedural matter. (citations omitted)

*Id.* at 491. This district has followed the Louisiana jurisprudence holding that "Louisiana law does not govern the right to a jury trial when suit is filed in a federal court. Louisiana courts have expressly held that statutes concerning the right to a jury trial are procedural." *Chatzicharalambus v. Petit*, 73 F.R.D. 417, 419 (E.D. La.1977). The Levee Board's motion must be denied. Plaintiff's request for jury trial against all defendants shall be maintained.

### Motion of ADS to Dismiss

ADS has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), arguing that this Louisiana court has no personal jurisdiction over defendant ADS, that this court has no subject matter jurisdiction over the claims alleged under the Fair Credit Reporting Act or under the Louisiana Unfair Trade Practices Act, and finally, that even if this court has subject matter jurisdiction,

the plaintiff's pendent claims for invasion of privacy and for negligence should be dismissed for failure to allege malice or willful intent. Plaintiff opposes these motions.

■ ADS argues initially that this court does not have personal jurisdiction over it because ADS does not have sufficient minimum contacts with the state of Louisiana. The following facts are represented by the Chairman of the Levee Board and Chief Executive Officer of ADS to be true and correct, as summarized by the defendant in its memoranda:

> ADS is a publicly traded Oklahoma corporation in good standing. On April 13, 1989 ADS became the parent corporation of LSI. This relationship was created [when] Labspecs, Inc., an Oklahoma corporation, merged with Laboratory Specialists, Inc. ("LSI") a Louisiana corporation, pursuant to Articles of Merger.... The corporation surviving the merger was LSI. At the time Labspecs, Inc. merged with LSI all outstanding shares of Labspecs, Inc., were owned by ADS. ADS acquired 100% of the stock of LSI in April, 1989, from funds derived from a public stock offering of ADS stock. As a result of Labspecs, Inc./LSI merger, ADS became the sole shareholder of LSI stock (i.e., LSI's "parent" corporation).

> To strengthen its investment in LSI, ADS committed to a temporary infusion of capital and equipment purchases. ADS also agreed to lend its financial backing to LSI through a Louisiana financial institution....

> Consistent with usual practice between most parent and subsidiary corporations, the presidents of LSI and ADS are common directors of both LSI and ADS.

Memorandum in Support of ADS' Motion to Dismiss, pp. 2–3, Exhibit A, pp. 1–4. LSI has offices in Belle Chasse, Louisiana and unquestionably does business within the state of Louisiana.

The plaintiff alleges in his memorandum in opposition to ADS' motion to dismiss for lack of personal jurisdiction that there are sufficient facts in dispute to preclude dis-

missal because ADS operates through LSI in Louisiana, LSI is the *alter ego* of ADS, and/or ADS has sufficient minimum contacts with the state of Louisiana. Without deciding the *alter ego* question, about which the plaintiff has certainly raised a question of fact[1], the Court finds that the affidavit of John Simonelli, the CEO and Chairman of the Board of ADS, demonstrates that ADS has sufficient minimum contacts with the state of Louisiana for this court to exercise personal jurisdiction over it. The ADS CEO established by his sworn statement that ADS sought to acquire the stock of a Louisiana corporation and has entered into a merger agreement with LSI. It has filed Articles of Merger with the Louisiana Secretary of State. It invested money in the Louisiana corporation and entered into a guarantee agreement with a Louisiana financial institution to obtain a line of credit for LSI. LSI is a wholly owned subsidiary of ADS and as a result thereof, ADS and LSI have engaged in joint business dealings, such as the merger and the financial arrangements, which have their base in the state of Louisiana.

The Supreme Court has defined the benchmarks upon which personal jurisdiction may be exercised by a forum over a non-resident consistent with the constitutional mandate of the due process clause. As quoted by ADS in its memorandum, the Supreme Court summarized the jurisprudential requirements governing a forum's exercise of personal jurisdiction over a defendant:

> Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. (citations omitted) Thus where the defendant 'deliberately' has engaged in significant activities within a State, (citation omitted) or has created 'continuing obligations' between himself and residents of the forum, (citation omitted) he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
>
> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. (citations omitted) (emphasis in original).

*Burger King v. Rudzewicz*, 471 U.S. 462, 475–476, 105 S.Ct. 2174, 2183–2184, 85 L.Ed.2d 528 (1985).

Using these guidelines, this Court concludes that ADS has a "substantial connection" with the state of Louisiana and has "deliberately" engaged in continuing obligations with residents of this state. It has engaged in financial agreements and negotiations with Louisiana financial institutions to fund the activities of its subsidiary,

---

**1.** The deposition testimony of Arthur Peterson, a director of both LSI and ADS, is attached to plaintiff's motion. Mr. Peterson testified that LSI is a publicly traded corporation which is traded on the NASDAQ stock exchange in the form of ADS, that ADS files the forms required by the Securities and Exchange Commission on behalf of LSI, and that LSI is the operating company for ADS. Further, plaintiff alleges, and can presumably prove through copies of the court documents, that ADS filed suit in federal court in Oklahoma on behalf of LSI seeking to enjoin the National Institute on Drug Abuse from enforcing the suspension of LSI's certification to conduct employee urine drug testing for the federal government in civil action 90–209W, *ADS v. Schuster, Director, National Institute on Drug Abuse*, United States District Court, Western District of Oklahoma.

LSI; it has a substantial connection with LSI, a Louisiana corporation, entering into a merger agreement to obtain the Louisiana-located company, which operates within this state, and "infusing it" with capital. Under these circumstances, the exercise of this forum's personal jurisdiction over ADS does not violate the requirements of due process.

■ Next, ADS contends that this court has no subject matter jurisdiction over the claims alleged under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and that under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff's claims thereunder should be dismissed. The statute states, in pertinent part:

(a) The Congress makes the following findings:

. . . .

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(b) It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681. Plaintiff has filed suit under this statute alleging that he is a consumer as defined by § 1681a(c), that ADS and LSI are "consumer reporting agencies" as defined by § 1681a(f), that the test report prepared by LSI is a "consumer report" as defined by § 1681a(c), and that the Board is a "user of consumer reports" as defined by § 1681m. The plaintiff further claims that LSI violated the statute by failing to follow reasonable procedures to ensure the accuracy of the reports as required by § 1681e(b).

The term "consumer report" is defined in § 1681a(d) as meaning:

[Any] written, oral, or other communication of *any information* by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, *personal characteristics*, or *mode of living* which is used or expected to be used or collected in whole or in fact for the purpose of serving as a factor in establishing *the consumer's* eligibility for (1) credit or insurance to be used primarily for person, family, or household purposes, or (2) *employment purposes*, or (3) other purposes authorized under section 1681b. *The term does not include (A) any report containing information solely as to transactions or experiences between the consumer and the person making the report....*

15 U.S.C. § 1681a(d) (emphasis added).

ADS argues that the statute does not apply because the "information" furnished by the plaintiff was related solely to the transaction between LSI and the plaintiff, the furnishing of a urine sample. However, as pointed out by the plaintiff, the "information", or sample, was submitted to Methodist, a third person.

A motion to dismiss under Rule 12(b)(6) based virtually on the identical facts and law was decided by the United States District Court for the Middle District of Louisiana. United States District Judge Naumann Scott, in reasoning adopted herein, held in *Hodge v. Texaco USA*, 761 F.Supp. 27 (M.D.La.1990), that he found it "conceivable" that the plaintiff could prevail under the statutes cited and that the allegations of his complaint stated a claim under Rule 8(a) of the Federal Rules of Civil Procedure. *Hodge*, at p. 4. This Court agrees that the claim cannot be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules as, given a plain reading of the statute and no jurisprudence to the contrary having been cited, the plaintiff could prevail on his claim under 15 U.S.C. § 1681 *et seq.* The defendant's motion to dismiss on this basis should therefore be denied.

■ ADS further argues that the plaintiff's pendant state claims under the Louisi-

ana Unfair Trade Practices Act must be dismissed solely because LSI is not a consumer reporting agency and did not issue a consumer report. The Court has found that the facts alleged must support a finding that LSI is a consumer reporting agency and that the report issued could be a consumer report within the meaning of the Fair Credit Reporting Act. Plaintiff's claims cannot be dismissed on that basis, however, the Court shall discuss this statute's applicability further in connection with the Levee Board's motion to dismiss.

 ADS finally alleges that the plaintiff's claims of defamation and invasion of privacy must be dismissed because the plaintiff has failed to allege that the defendant acted with "malice or with willful intent to injure the consumer." 15 U.S.C. § 1681h(e). The act provides that consumer reporting agencies, users of information, or furnishers of information, may not be sued for defamation, invasion of privacy, or negligence under state law, except that suits may be maintained under the act itself as provided in § 1681n and § 1681o. Thus, the plaintiff's claims under state law are allowable in the alternative in the event that the factfinder determines that the entire transaction does not fall under the purview of the Fair Credit Reporting Act. ADS' motion to dismiss on this basis should be denied.

### Motion of Levee Board to Dismiss

The Levee Board has filed a partial motion to dismiss the plaintiff's claims under the Fair Credit Reporting Act and under the Louisiana Unfair Trade Practices Act, LSA–R.S. 51:1401 *et seq.* The Levee Board's motion to dismiss the plaintiff's claims under the Fair Credit Reporting Act should be denied for the reasons previously assigned to the denial of ADS' motion.

 The Louisiana Unfair Trade Practices Act provides a private right of action for any person "who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages." The courts have construed that the statute gives protection only to consumers and business competitors. *Gil v. Metal Service Corp.,* 412 So.2d 706, 707 (La.App. 4th Cir.1982); *National Oil Service of La. v. Brown,* 381 So.2d 1269 (La.App. 4th Cir. 1980). A "consumer" is defined in the statute as "any person who uses, purchases, or leases goods or services." LSA–R.S. 51:1402(1). Plaintiff, as one who utilized the services of LSI, could be defined as a "consumer" under this section. The defendant has not demonstrated to this Court under the statute or the jurisprudence cited that the plaintiff is not a consumer under the meaning of the statute. The plaintiff's claims under this statute cannot be dismissed under Rule 12(b)(6) for failure to state a claim.

### Conclusion

Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the motion of the Levee Board to Strike the Plaintiff's Request for Jury Trial be and is hereby DENIED;

IT IS FURTHER ORDERED that the motion of American Drug Screens, Inc. to dismiss the Second Amended Complaint pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(6) be and is hereby DENIED;

IT IS FURTHER ORDERED that the motion of the Levee Board for Partial Dismissal be and is hereby DENIED.