685 So.2d 382 (1996)
Clarence LANDRUM, Jr.,
v.
The BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT, et al.
No. 95-C-1591.
Court of Appeal of Louisiana, Fourth Circuit.
November 27, 1996.
Rehearing Denied January 23, 1997.
*385 John J. Hainkel, Jr., Ralph R. Alexis, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, and Gary Benoit, Orleans Levee District, New Orleans, for Defendant/Relator, The Board of Commissioners of the Orleans Levee District.
Joel P. Loeffelholz, New Orleans, for Plaintiff/Respondent, Clarence Landrum, Jr.
*386 Before KLEES, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
This matter was previously before us when The Board of Commissioners of the Orleans Levee District (the OLB) applied for a supervisory writ to review a trial court judgment denying its exceptions of res judicata, no cause of action and lack of subject matter jurisdiction, as well as its motion for summary judgment. Although we granted the writ and fully reviewed all materials filed by the parties, relief was denied because we found "[t]he pleadings and evidence submitted... do not establish that [the OLB] is entitled to any relief which would end its involvement in this litigation." However, the Supreme Court granted the OLB's writ and remanded to this Court "for a full opinion after briefing and argument." After full reconsideration in compliance with the Supreme Court's order, we affirm the judgment before us for the reasons which follow.

FACTS AND PROCEEDINGS BELOW
Clarence Landrum, who was a major and second-in-command in the OLB Police Department, was involved in an automobile accident on August 31, 1989 while he was on duty. Pursuant to OLB guidelines, he submitted to urinalysis and a blood test to detect the presence of alcohol or illegal drugs. The urine specimen was reported as containing tetrahydrocannabinol, the chief intoxicant in marijuana, a controlled substance. Mr. Landrum subsequently submitted a second urine specimen which also reportedly tested positive for marijuana. Mr. Landrum was suspended without pay based upon these reports. In the petition, it is alleged that inadequate security and chain of custody procedures in the urinalysis resulted in inaccurate results, and that the OLB initially refused to give Mr. Landrum the name and address of the facility that performed the urinalysis.
Mr. Landrum's job suspension and the reason therefor were reported by the local newspaper, the Times-Picayune, which cited "board sources" as originating the story. The newspaper account said the information had been confirmed by "[s]everal Levee Board members and a state Civil Service Department source," then quoted two OLB board members who indicated that Mr. Landrum was going to appeal the suspension. One of the board members was also quoted as stating that Mr. Landrum volunteered to take the drug test, and that he [the board member] hoped that further testing would prove the positive test results faulty. According to the newspaper, this board member felt that Mr. Landrum would be exonerated.
After an administrative hearing, Mr. Landrum's employment was terminated by the OLB. This action was appealed to the state Civil Service Commission, but the parties entered into a two-page handwritten settlement agreement prior to the scheduled hearing of that appeal. Under their compromise, the OLB rescinded the suspension and termination, retroactively reinstating Mr. Landrum with full back pay and benefits; all record of the disciplinary action was to be deleted from his personnel file. Under the same agreement, however, Mr. Landrum voluntarily resigned effective that date, June 20, 1990.
Mr. Landrum filed this civil suit in August 1990 against the OLB and other defendants.[1] He asserts that because the urinalysis results constitute "consumer reports" under the federal Fair Credit Reporting Act (FCRA), the OLB's initial failure to disclose the testing facility's name and address violated both the FCRA[2] and the Louisiana Unfair Trade Practices and Consumer Protection *387 Law. It is further alleged that the OLB's board members and/or unnamed employees improperly divulged the drug test results to the public, giving rise to Mr. Landrum's claims for intentional or negligent infliction of emotional distress, defamation and invasion of privacy.
In January 1995, the OLB filed exceptions of lack of subject matter jurisdiction, res judicata, and no cause of action as well as a motion for summary judgment of dismissal of the suit. After hearing, the trial court rendered judgment overruling all exceptions and denying the motion; no written or oral reasons were furnished. This writ application followed.

DISCUSSION

1. Lack of subject matter jurisdiction
We first address the OLB's exception of lack of subject matter jurisdiction since a determination that the district court did not have subject matter jurisdiction will end our review. See La.Code Civ. Proc. Ann. art. 3; DeHaven v. DeHaven, 412 So.2d 537 (La. 1982).
The Louisiana Constitution grants to the Civil Service Commission "the exclusive power to hear and decide all removal and disciplinary cases." La. Const. art. 10 § 12. The OLB therefore argues that the Civil Service Commission has exclusive jurisdiction of any claim by a classified civil service employee arising out of the events relating to his employment. The OLB has cited Myers v. Ivey, 93-1166 (La.App. 3d Cir. 4/6/94), 635 So.2d 632, and Jackson v. State, 521 So.2d 436 (La.App. 4th Cir. 1988), as supporting its position. We find neither of these cases dispositive of the issue here. Myers involved a claim for intentional infliction of emotional distress asserted by a current civil service employee based upon his employer's alleged ongoing discriminatory treatment. Similarly, Jackson dealt with a charge of sexual discrimination with regard to conditions of employment. Both of these situations are clearly within the exclusive jurisdiction of the Civil Service Commission.
We agree with the OLB that, to the extent that Mr. Landrum sought a remedy for his loss of employment, such a claim had to be pursued through the Civil Service Commission. As noted above, however, the OLB rescinded all disciplinary actions against Mr. Landrum in the compromise agreement of June 20, 1990, and he voluntarily resigned his position. Therefore, Mr. Landrum has no claim against the OLB arising from either his suspension or removal.
The constitutional provision that grants judicial authority to the Commission is narrowly construed since it is an exception to the general rule that district courts have jurisdiction over all civil matters. Greenleaf v. DHH, Metropolitan Developmental Center, 594 So.2d 418, 425 (La.App. 1st Cir.1991) [citing In re Investigation of Smith, 546 So.2d 561, 563 (La.App. 1st Cir.), writ denied, 550 So.2d 636 (La.1989)], writ denied, 596 So.2d 196 (La.1992). The Civil Service Commission does not have jurisdiction of tort cases nor can it award monetary damages for tortious conduct. Greenleaf, 594 So.2d at 425; see also Moore v. Board of Supervisors of L.S.U., 559 So.2d 548 (La.App. 2nd Cir.1990). Under the circumstances of this case, Mr. Landrum's tort claims are not an attempt to circumvent the exclusive jurisdiction of the Civil Service Commission; he may look to the courts for damages for defamation and other torts arising out of the facts alleged here. Moore, supra: Manale v. City of New Orleans, 673 F.2d 122 (5th Cir.1982); see also Greenleaf, supra. For this reason, the trial court correctly overruled the exception to its subject matter jurisdiction.

2. Exception of res judicata
The next issue to be determined is whether the trial court properly overruled the exception of res judicata. The OLB contends that because the parties entered into a settlement agreement in June 1990, after all of the events and actions asserted as wrongful had occurred, Mr. Landrum's compromise necessarily included a waiver of all claims arising from those events.
We agree with the OLB's contention that the written contract between Mr. Landrum and the OLB is clearly a transaction or *388 compromise as defined in Article 3071 of our Civil Code, which can support a plea of res judicata. However, "[t]ransactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them." La. Civ.Code Ann. art. 3073 (emphasis added). In determining the parties' intent, the court generally may not consider extrinsic evidence, but must look only to the four corners of the agreement. La. Civ.Code Ann. art. 1848; Fascio v. Lee, 94-1149, p. 3 (La.App. 4th Cir. 2/23/95), 650 So.2d 1236, 1237-38. Thus, compromise agreements extend only to those matters which the parties expressly intend to settle. Condoll v. Johns-Manville Sale Corp., 448 So.2d 169 (La.App. 5th Cir.1984).
The language of the agreement at issue here does not suggest any intent to compromise or settle any claims other than Mr. Landrum's assertion that he was erroneously suspended and discharged by the OLB. As noted above, the contract states that all disciplinary actions were rescinded by the OLB, and Mr. Landrum instead resigned, further waiving "any right to any type of future employment" with the OLB. Most importantly, the agreement specifies in paragraph five that "[t]here are no other terms to this agreement."
The OLB's reliance on Ingram Corporation v. J. Ray McDermott & Co., Inc., 698 F.2d 1295 (5th Cir.1983), is therefore misplaced. In Ingram, the court determined that even antitrust claims not known to exist at the time of the compromise were concluded because the agreement specified that the parties had settled "any and all claims ... past, present, or future." Id. at 1311-12. In stark contrast to that language, the parties to the agreement at issue here expressly limited the scope of their compromise to the terms mentioned in the document. Because this contract pertains only to the OLB's suspension and termination actions, without mention of the other conduct asserted here as wrongful, the trial court did not err in overruling the exception of res judicata.

3. Exception of no cause of action and motion for summary judgment
By these pleadings, the OLB asserts that Mr. Landrum neither stated a cause of action in his petition nor can he prove all essential elements of his claims for the commission of unfair trade practices, intentional or negligent infliction of emotional distress, defamation and invasion of privacy.
The standards for evaluating an exception of no cause of action are well established:
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Darville v. Texaco, Inc., 447 So.2d 473 (La. 1984). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. Proc. art. 931. Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975); Kuebler v. Martin, 578 So.2d 113 (La.1991).
Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La. 1993) (footnote omitted). If more than one theory of recovery arises from the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered by the trial court because it results in a nonappealable interlocutory judgment.[3]Id. at 1241-42. Because we are reviewing this matter in an exercise of our supervisory jurisdiction, however, *389 we will address each of the OLB's arguments in support of its exception.
As with the OLB's exception, the standard for review of its motion for summary judgment is well settled in the law. In determining whether summary judgment is appropriate, appellate courts review the evidence de novo. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. This standard of review requires the appellate court to look at "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in making an independent determination that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. Ann. art. 966(B); Young v. Oberhelman, 607 So.2d 719 (La.App. 4th Cir.1992). In order to prevail on a motion for summary judgment, the movant must show "that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact." South Central Bell Telephone Co. v. Sewerage and Water Bd., 94-1648, 94-1649, p. 2 (La.App. 4th Cir. 3/16/95), 652 So.2d 1090, 1093, writ denied, 95-0949 (La.5/19/95), 654 So.2d 1090. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action. Whitney National Bank v. Rockwell, 94-3049 (La. 10/16/95), 661 So.2d 1325. Both the evidence and all inferences drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in his favor. Id. Like a partial exception of no cause of action, a partial summary judgment may not be used to decide an issue or dispose of theories of recovery.[4]Pape v. ODECO, Inc., 93-1005, p. 8 (La.App. 4th Cir. 9/21/94), 643 So.2d 229, 233; see also Collins v. GFS Company, Inc., 95-1545 (La.10/6/95), 661 So.2d 456, reversing 94-2063 (La.App. 4th Cir. 6/7/95), 657 So.2d 499. We therefore apply these standards to the OLB's motion for summary dismissal of Mr. Landrum's claims.

a. Claim for commission of unfair trade practices
La. Revised Statute § 51:1405 A prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce," and § 51:1409 A grants a right of action to "[a]ny person who suffers any ascertainable loss" from a violation of this prohibition. It has been left to the courts to decide, on a caseby-case basis, what conduct falls within the statute's prohibition. Dufau v. Creole Engineering, Inc., 465 So.2d 752, 758 (La.App. 5th Cir.), writ denied, 468 So.2d 1207 (La.1985). To be actionable under this statute, the courts have repeatedly required a showing that the conduct "offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious." Moore v. Goodyear Tire & Rubber Co., 364 So.2d 630, 633 (La.App. 2d Cir.1978) and cases cited therein; see also Lilawanti Enterprises, Inc. v. Walden Book Co., Inc., 95-2048, p. 6 (La.App. 4th Cir. 2/29/96), 670 So.2d 558, 561; Bolanos v. Madary, 609 So.2d 972, 977 (La.App. 4th Cir.1992), writ denied, 615 So.2d 339 (La.1993); Dufau, 465 So.2d at 758.
In this case, Mr. Landrum asserts that the OLB committed an unfair trade practice when it took action against him based upon the purportedly unreliable results of the urinalysis while refusing to inform him of the name and address of the laboratory which had performed the test. The OLB contends that because Mr. Landrum was neither a consumer nor a business competitor, but only its employee, he cannot establish a claim for a violation of R.S. § 51:1405.[5]
We note that the OLB's argument regarding this claim is actually that of an exception of no right of action, since it is *390 asserted that Mr. Landrum is not among those to whom this law affords a remedy. Sattar v. Aetna Life Ins. Co., 95-1108, p. 4 (La.App. 4th Cir. 3/20/96), 671 So.2d 550, 553. However, we pretermit any decision on this basis, holding instead that as a matter of law, the alleged actions by the OLB are not of the type contemplated by the enactment of the Unfair Trade Practices and Consumer Protection Law, R.S. § 51:1401 et seq. Although Mr. Landrum has acquired evidence which allegedly supports his claims that the laboratory tests were unreliable and erroneous, there is nothing to suggest that at the time of these events, the OLB's reliance on the results were "immoral, unethical, oppressive, unscrupulous, or substantially injurious." Similarly, the OLB's initial failure to disclose the name and address of the laboratory involved is not so offensive as to constitute an unfair trade practice.[6] Therefore, Mr. Landrum has no cause of action against the OLB under this statute.

b. Claim for infliction of emotional distress
In White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991), the Supreme Court stated:
[I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.
The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.
In asserting this claim, Mr. Landrum's petition refers to his factual allegations and then states that "[t]he actions of OLB [and the other defendants] as set forth above, intentionally or, in the alternative, negligently inflicted great emotional distress and damage upon plaintiff." As with the unfair trade practice claim, however, we find that the character of the OLB's conduct was not extreme, atrocious or intolerable, nor does it evince any intent to cause emotional distress. Compare Ratcliff v. Boydell, 93-0362, 92-0630, pp. 12-13 (La.App. 4th Cir. 4/3/96), 674 So.2d 272, 280 ("defendants' vindictive, dilatory, and obstreperous behavior" in litigating a fee dispute for six years constituted intentional infliction of emotional distress). Based on this finding, and because Louisiana law does not recognize an independent tort of negligent infliction of emotional distress, Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081, 1095-96 (La.1990), no cause of action has been stated for infliction of emotional distress.

c. Claim for defamation
The elements of an action for defamation are: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Landry v. Roberson Advertising Service, 95-0095, p. 6 (La.App. 4th Cir. 8/23/95), 660 So.2d 194, 197. Publication refers to any nonprivileged communication of defamatory words, written or oral, and it renders a defendant liable "for all republication that is the natural and probable consequence of the author's act." Martin v. Lincoln General Hospital, 588 So.2d 1329, 1333 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1302 (La.1992), and cases cited therein.
Statements that accuse a person of criminal conduct are defamatory per se, Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196, 198 (La.1980), which generally relieves a plaintiff of the need to prove malice, Fourcade v. City of Gretna, 598 So.2d 415, 419 (La.App. 5th Cir. 1992); Martin, 588 So.2d at 1333. Where the plaintiff is a "public official," however, he must establish that the defendant acted with actual malice, i.e., that he knowingly communicated false information, or that he acted without regard to whether the communication was true or false. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 *391 L.Ed.2d 686 (1964); Romero v. Thomson Newspapers (Wisconsin), Inc., 94-1105, p. 5 (La.1/17/95), 648 So.2d 866, 869, cert. denied, ___ U.S. ___, 115 S.Ct. 2556, 132 L.Ed.2d 810 (1995). "[T]he `public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." Rosenblatt v. Baer, 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966) (footnote omitted).
Mr. Landrum's petition alleges that before the accuracy of the drug test had been verified, and despite the fact that the results were to be confidential, "members and/or officers and/or employees and/or agents and/or representatives of OLB ... published by written and/or oral communication" the fact that the test had been positive for illegal drugs. It is further alleged that this information, asserted to be "equivalent to an accusation that plaintiff had committed a crime," was circulated by those for whom the OLB is vicariously liable to such an extent that it resulted in publication in the local newspaper. The petition asserts that the positive test result was false and inaccurate, and that Mr. Landrum thereby suffered a loss of reputation and emotional distress from the wrongful disclosure. These factual allegations are sufficient to state a cause of action for defamation against the OLB.
However, when the OLB moved for summary judgment and presented evidence to negate his claim, Mr. Landrum was required to present countervailing evidence "of sufficient quality and quantity to demonstrate that he likely will be able to meet his burden of proof at trial." Tarpley v. Colfax Chronicle, 94-2919, p. 2 (La.2/17/95), 650 So.2d 738, 740. The evidence presented in opposition to the motion in this case does not meet that standard.
The OLB's argument in support of dismissal of this claim rests primarily on the contention that Mr. Landrum was a "public official" who must prove actual malice under the New York Times standard. While the only evidence cited as establishing this status is an affidavit stating that he was second-incommand of the Levee Board Police, Mr. Landrum's appeal of his dismissal was included among the OLB's documents and states in part:
My duties include interviewing, processing, orientation and training of new personnel evaluating of personnel within the police department; establishing and coordinating police/Board policies and procedures; review and initiate disciplinary actions taken regarding police personnel; chief liason [sic] officer between the agency and all other law enforcement or related agencies; coordinating and supervising special events that reflect Board responsibility; and any internal assignments/duties as needed by the Board. [Emphasis added.][7]
Mr. Landrum presented no evidence nor argument concerning his status as a "public official." Based upon his description of his duties, which appears to include "substantial responsibility for or control over the conduct of" the Levee Board police, we find Mr. Landrum to be a "public official" as defined by the U.S. Supreme Court. Therefore, to prevail on his defamation claim he must prove actual malice by the OLB.
The OLB's evidence includes copies of all pertinent laboratory test results, all disciplinary correspondence from the OLB to Mr. Landrum, and a complete transcript of the testimony taken at the administrative hearing which resulted in the recommendation that Mr. Landrum's employment be terminated. The clear tenor of this evidence is that all proceedings were conducted in accordance with established policy, and with good faith reliance on the capabilities and reliability of the laboratory which performed the testing at issue. The only opposing evidence is an affidavit by a forensic toxicologist who *392 subsequently concluded that, for reasons set forth therein, the urinalysis results reported to the OLB were not scientifically reliable. There is nothing to suggest, however, that any of the OLB personnel knew or should have known at the time of the events at issue that the laboratory reports could be inaccurate. Therefore, Mr. Landrum has not presented substantial evidence to establish that any unprivileged communications by the OLB of the fact that he had failed a drug test, even if false, was made with knowledge or in reckless disregard of its falsity. Accordingly, there is no triable claim for defamation surviving the OLB's motion for summary judgment.

d. Claim for invasion of privacy
Louisiana jurisprudence has defined the right to privacy as the "right to be let alone" or "the right to an `inviolate personality,' " and has recognized that the violation of that right is actionable. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1388-89 (La.1979). An actionable invasion of privacy occurs only when a defendant's conduct is unreasonable and seriously interferes with another's privacy interest. Id. at 1389.
Mr. Landrum asserted in his petition that because no one outside of the OLB had a legitimate reason to know the results of the drug tests, the disclosure of that information was unreasonable and a serious interference with his interest in privacy. Although Jaubert recognized four instances in which an individual's right to privacy might be invaded, we find that Mr. Landrum has stated a cause of action based upon two of the grounds delineated in that case: an invasion by publicity that unreasonably places the plaintiff in a false light before the public, and an invasion by the unreasonable public disclosure of embarrassing facts.
Arguing for dismissal of this claim in its motion for summary judgment, the OLB asserts that "as with defamation, there can be no recovery where a public official is involved absent proof of actual malice," citing Rosales v. City of Eloy, 122 Ariz. 134, 593 P.2d 688 (1979). Alternatively, the OLB claims its communications were protected by privilege under Boyd v. Community Center Credit Corp., 359 So.2d 1048 (La.App. 4th Cir.1978). However, there is no indication given as to the particular evidence the OLB relies upon to defeat this claim.
We reject the OLB's argument that Mr. Landrum must show actual malice in order to recover from the OLB for an invasion of privacy. While such a requirement has been discussed in cases involving media defendants, see, e.g., Jaubert, 375 So.2d at 1389-90 and the cases cited therein, we find nothing in Louisiana law to suggest that a non-media defendant can only be liable for an invasion of privacy involving a falsehood. In this action, Mr. Landrum is not asserting that the Times-Picayune should not have published the story, but that the OLB is liable for allowing highly personal and embarrassing information to go beyond those with a legitimate need to know and into the public domain. Furthermore, while Boyd involved the well-recognized privilege regarding an employer's disclosures to an unemployment agency, we are aware of no privilege which would protect an employer's public disclosure of embarrassing facts, as alleged here. Instead, the reasonableness of the public disclosure of the results of the drug testing is a factual question that should not be decided on summary judgment.
Accordingly, we find that the OLB has not established that there is no material factual dispute regarding Mr. Landrum's claim for invasion of privacy. While the newspaper article credits "board sources" for disclosing the information, the OLB has presented no evidence to rebut the inference that these "sources" were those for whom it is vicariously liable. Although Mr. Landrum will bear the burden of proving both that the OLB was at fault for the disclosure and that its unreasonable conduct constituted a serious interference with his privacy interest, the OLB has not shown that it is entitled to a judgment of dismissal as a matter of law. Therefore, the trial court was correct when it refused to dismiss Mr. Landrum's claim against the OLB for invasion of privacy.

*393 CONCLUSION
The trial court has subject matter jurisdiction of these tort claims, and the exception of res judicata was properly overruled. While Mr. Landrum failed to state a cause of action for unfair trade practices and intentional or negligent infliction of emotional distress, the district court did not err in overruling the exception of no cause of action based upon the legally sufficient allegations of defamation and invasion of privacy. Similarly, although Mr. Landrum failed to establish a triable claim for defamation, unresolved factual issues regarding his claim for invasion of privacy prevented the granting of the OLB's motion for summary judgment of dismissal. Therefore, the judgment below is affirmed.
AFFIRMED.
NOTES
[1] The gist of Mr. Landrum's claims against these other parties can be found in Landrum v. Board of Commissioners, 758 F.Supp. 387 (E.D.La. 1991).
[2] The case was removed to federal court based on the federal question presented by Mr. Landrum's claim under the FCRA. While the OLB states that the federal district court granted summary judgment in favor of the OLB on the FCRA claim and remanded the remaining state law claims to the Civil District Court, it does not appear that this judgment was filed for record in this proceeding. See Ansalve v. State Farm Mutual Automobile Ins. Co., 95-0211, pp. 9-10, (La. App. 4th Cir. 2/15/96), 669 So.2d 1328, 1333-34.
[3] As stated in Rodriguez v. American Bankers Ins. Co., 386 So.2d 652, 653 (La.1980), "[t]he preferable procedure is for the trial court to overrule the exception and at the trial on the merits to exclude evidence" pertaining to those claims or theories of recovery found to be unsupported by the pleadings; any evidence or testimony thereby excluded may be proffered for consideration on appeal.
[4] See supra note 3.
[5] In support of its argument, the OLB cites Gil v. Metal Service Corp., 412 So.2d 706 (La.App. 4th Cir.), writ denied, 414 So.2d 379 (La.1982), and Davis v. Manpower Int'l, Inc., 623 So.2d 946 (La.App. 4th Cir.), writ denied, 629 So.2d 1173 (La. 1993), which relied upon Gil regarding an employee's standing to assert a claim under the Unfair Trade Practices and Consumer Protection Law. But see Preis v. Standard Coffee Service Co., 545 So.2d 1010 (La. 1989), where the Supreme Court appears to have recognized that a breach of an employer's "obligation not to enforce an illegal non-solicitation agreement against its employee" is actionable under this statute.
[6] Mr. Landrum's petition states that he went to the laboratory facility itself on September 7, 1989 to furnish the second urine specimen. It is therefore clear that the OLB's "refusal" to disclose the identity of the lab did not exceed one week.
[7] Had Mr. Landrum not included this job description in his administrative appeal, it is doubtful that the OLB could have prevailed on this issue as no other evidence was offered to establish his duties and responsibilities. We are not aware of any per se rule which would establish that a career civil servant is a "public official" under New York Times merely because he or she is in an upper administrative level.