731 So.2d 991 (1999)
Theodore MELDER
v.
SEARS, ROEBUCK AND COMPANY and The City of New Orleans.
No. 98-CA-0939.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1999.
*994 Leopold Weill, III, New Orleans, Louisiana, Attorney for Plaintiff/Appellant Theodore Melder.
Jonathan C. McCall, W. Anthony Toups, III, Douglas L. Grundmeyer, Lou Anne Milliman, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, Louisiana, Attorneys for Defendant/Appellee Sears, Roebuck and Co.
Court composed of Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN and Judge PATRICIA RIVET MURRAY.
MURRAY, Judge.
Theodore Melder filed suit against Sears, Roebuck & Company and the City of New Orleans, seeking damages for false arrest and imprisonment, malicious prosecution, defamation and invasion of privacy. Sears moved for summary judgment as to all claims. The trial court granted the motion and certified the judgment as final under Article 1915 of the Code of Civil Procedure. For the following reasons, we affirm.

FACTS:
Theodore Melder was arrested on November 20, 1985, at the Sears store in the Lake Forest Plaza Shopping Center, where he was employed as a salesman in the television department. The arrest followed an investigation by Sam Carriere,[1] the head of security at the Sears Lake Forest store. The investigation was prompted by the auditing department's discovery of irregularities involving returns of merchandise for cash or credit at the store.
As a routine practice, the auditing department sent out letters to customers who had returned merchandise to ascertain, among other things, why the merchandise was returned, and if the customer was satisfied with the store's handling of the return. If a letter was returned because of a bad address or if the customer replied that he did not make a return of merchandise, the letter was turned over to store security. Mr. Carriere became suspicious when he noticed that several of these letters involved transactions authorized by Mr. Melder.
Mr. Carriere conducted an investigation that included cross-checking various store records, and attempting to personally contact the customers listed on the suspicious credit slips. If he could not contact a customer by telephone, he would try to locate an address and send a verification letter to that customer. Mr. Carriere also verified that Mr. Melder had been on duty on the days the suspicious slips had been issued, and that the cash register involved had balanced at the end of each day. After completing his investigation and determining that numerous credit slips were not legitimate, he approached Mr. Melder.
According to Mr. Melder's deposition testimony, he was called to Mr. Carriere's office during his shift on November 20, 1985, and was told that Mr. Carriere was investigating thefts from the television department. Mr. Carriere asked Mr. Melder if he would help in the investigation, to which Mr. Melder replied he would not.[2] Mr. Melder was then told that he was the person being accused of the thefts, and *995 Mr. Carriere thereafter summoned New Orleans Police Officer Michael R. Bolline, who was working a detail at the store, to arrest him.
Mr. Melder was acquitted of the theft charges after a bench trial on October 21, 1986. The trial judge stated that he was prone to find Mr. Melder guilty, except for the fact that, among other things, the State had failed to introduce the testimony of a handwriting expert to verify that Mr. Melder had forged customers' signatures or falsified information on the credit slips.
In May of 1987, Mr. Melder filed this suit in Orleans Parish Civil District Court. Sears moved for a summary judgment of dismissal in September 1997, and the trial court granted its motion. This appeal followed.

DISCUSSION:
In his petition, Mr. Melder alleges that Sears and the City of New Orleans are liable for damages sustained as a result of false arrest and imprisonment, malicious prosecution, defamation, and invasion of privacy. On appeal, he asserts that the trial court erred in granting Sears' motion for summary judgment because there are genuine issues of fact as to each and every claim, and Sears is not entitled to summary judgment as a matter of law.
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. Facts are material when their existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Id. at 27, 639 So.2d at 751.
Louisiana Code of Civil Procedure article 966 C now provides:
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, motion, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
In this case, Sears argued that the pleadings, depositions, and other evidence offered in support of its motion establishes that Mr. Melder will be unable to prove at least one essential element of each claim he has asserted.

A. False Arrest and Imprisonment:
Mr. Melder argues that Sears falsely arrested and/or imprisoned him when he was called into Mr. Carriere's office on November 20, or that Sears instigated or effected a false arrest by Officer Bolline.
False arrest and imprisonment occur when a person is arrested and restrained against his will without a warrant or other statutory authority. Harrison v. Phillips, 539 So.2d 911, 913 (La.App. 4 Cir.), writ denied, 541 So.2d 894 (La.1989). An arrest occurs when one person takes another into custody and there is an actual restraint of that person. State v. Giovanni, 375 So.2d 1360, 1363 (La.1979).
In his deposition, Mr. Melder admitted that he was not detained after being called to Mr. Carriere's office. At no time was he prevented from leaving:
Q: Now when Mr. Carriere called you to his office, did you go of your own free will?
A: Yes.

*996 Q: Did he force you to stay in his office at any time?
A: No.
This admission by Mr. Melder that he was not detained by a Sears' employee negates his claim of false arrest and imprisonment by Sears. However, as stated above, Mr. Melder claims also that Sears is liable for false arrest and imprisonment because it effected Mr. Melder's arrest by summoning Officer Bolline to arrest him. To support this claim, Mr. Melder must prove that his arrest was illegal or false.
Louisiana Code of Criminal Procedure article 213(3) provides that a peace officer may arrest without a warrant when "[t]he peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer." Article 214 further provides that "[a] private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence."
Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in believing the person to be arrested has committed an offense. State v. Noto, 596 So.2d 416, 419 (La.App. 4 Cir.1992). The arresting officer does not need to be convinced beyond a reasonable doubt of the guilt of the arrested person. State v. Weinberg, 364 So.2d 964, 969 (La. 1978). The determination of probable cause requires more than suspicion, but does not require evidence sufficient to support a conviction; as the name implies, probable cause deals with probabilities. State v. Johnson, 94-1170, p. 4 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, 946 writs denied, 95-2331, 95-3044 (La.2/2/96), 666 So.2d 1092, 1105. "The determination of probable cause involves factual and practical considerations of everyday life on which average men ... can be expected to act." Id. at pp. 4-5, 660 So.2d at 946, citing State v. Ogden, 391 So.2d 434 (La. 1980).
Officer Bolline testified that he was summoned to Mr. Carriere's office where Mr. Carriere briefed him on the situation. He stated that Mr. Carriere told him that Sears' accounting department had discovered a large number of suspicious credit slips that had been exchanged for money, and that Mr. Melder's signature or initials was on each of them. Mr. Carriere explained that he had sent letters to each of the customers whose names appeared on the credit slips, and that the letters were either returned because of bad addresses, or the customer denied having returned the merchandise indicated on the slip. Officer Bolline was told that Mr. Carriere had confirmed that Mr. Melder was working at the time each slip was cashed. Officer Bolline was also told that the Orleans Parish District Attorney's office had been contacted and had indicated that there appeared to be sufficient evidence to charge Mr. Melder with theft by fraud.
Officer Bolline further testified that before he entered the office where Mr. Melder was sitting, Mr. Carriere orally summarized the documentary evidence he had assembled in the course of his investigation. However, Officer Bolline did not actually see this evidence, which included thirty-eight credit slips processed by Mr. Melder since January 1985 as well as computer printouts from the cash registers involved, until after Mr. Melder had been arrested and given his rights.
Mr. Melder has offered no evidence to contradict Officer Bolline's deposition testimony, arguing only that the fact that he was acquitted establishes that there was no probable cause for his arrest. Mr. Melder claims that Officer Bolline should have conducted his own independent investigation and/or review of each document before arresting Mr. Melder. We disagree. The information supplied to Officer Bolline was sufficient for him to believe there was a reasonable probability that Mr. Melder had committed a crime. He *997 knew that a crime had been committed and believed that Mr. Carriere was a reliable source of information. Mr. Melder has failed to establish that he was arrested without probable cause.
The record supports Sears' proposition that Mr. Melder was not falsely imprisoned or arrested by Sears, or that Sears effected his illegal arrest by the New Orleans Police Department.[3] Mr. Melder has produced no factual support sufficient to establish that he will be able to satisfy his burden of proof on this claim at trial. Therefore, there is no genuine issue of material fact and summary judgment was proper.

B. Malicious Prosecution:
The elements that a plaintiff must prove to support a claim of malicious prosecution are:
1. The commencement or continuance of an original criminal proceeding;
2. Its legal causation by the present defendant against the plaintiff who was the defendant in the original proceeding;
3. Its bona fide determination in favor of the present plaintiff;
4. The absence of probable cause for such proceeding;
5. The presence of malice therein; and
6. Damage conforming to legal standards resulting to the plaintiff.
Keller v. Schwegmann Giant Supermarkets, Inc., 604 So.2d 1058, 1060 (La.App. 4 Cir.), writ denied, 609 So.2d 232 (La.1992).
It is undisputed that Mr. Melder was tried for theft, and was acquitted. Those facts are arguably sufficient to satisfy the first three elements necessary for his claim. However, to maintain his claim for malicious prosecution, Mr. Melder must prove also that Sears lacked probable cause to have him arrested, that it had a malicious purpose for doing so, and that he suffered damages as a result of the prosecution.
As explained above, Mr. Melder failed to offer any evidence suggesting that Sears' evidence was insufficient to refer the matter for prosecution. Mr. Carriere testified at Mr. Melder's criminal trial that the auditing department gave him two credit slips apparently authorized by Mr. Melder. In response to the verification letter sent out by the department, the customer on the slip either did not live at the address given, or responded that merchandise had not been returned. He did not find anything particularly suspicious about this until, within a very short period of time, he received three more slips from the auditing department, all with Mr. Melder's authorization. Mr. Carriere attempted to contact all of the customers involved, and either found that the address given for the customer was incorrect or was told by the customer that merchandise had not been returned. This prompted him to pull other credit slips for that time period.
Mr. Carriere testified that his suspicions about Mr. Melder's involvement increased after he checked time cards to see if Mr. Melder was working when the credit slips were redeemed. He was. The credit slips indicated the date the merchandise was originally purchased. Mr. Carriere checked the register tapes for those dates, but the tapes did not indicate that a sale for that amount was made. To confirm that the slips had not been placed in the drawer in error, he checked the over/short records for the registers, but the registers balanced. Mr. Carriere thus concluded that the slips had been placed in the drawer and cash had been removed.[4]
*998 Mr. Carriere then checked the credit slips back to the beginning of the year (1985). On all of the slips that appeared to be similar, he attempted to call the customer. If he could not reach the customer by telephone, he sent verification letters. These were either returned as undeliverable, or the customer responded that merchandise was not returned. Only after this extensive investigation did Mr. Carriere approach Mr. Melder for an explanation and, receiving none, filed a criminal complaint.
We note that there are some minor discrepancies between Mr. Carriere's recollection of the facts of the investigation and Officer Bolline's testimony about what he was told by Mr. Carriere. These discrepancies are, however, irrelevant to the issue of probable cause. Mr. Carriere's testimony clearly indicates that Sears had sufficient probable cause to ask for Mr. Melder's arrest.
Because Mr. Melder has failed to establish that Sears lacked probable cause to assert criminal charges against him, a necessary element of his claim for malicious prosecution, we need not address the remaining elements. The grant of summary judgment as to this claim was proper.

C. Defamation:
To support his claim for defamation, Mr. Melder must prove a false and defamatory statement about him; an unprivileged communication to a third person; fault (negligence or greater) on the part of the publisher; and resulting injury. Trentecosta v. Beck, 96-2388, p. 10 (La.10/21/97), 703 So.2d 552, 559. Thus, Mr. Melder must prove that Sears, "with actual malice or other fault, published a false statement with defamatory words which caused [him] damages." Sassone v. Elder, 626 So.2d 345, 350 (La.1993).
Statements that accuse a person of criminal conduct are defamatory per se. Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196, 198 (La. 1980). Publication includes any nonprivileged communication of defamatory words, written or oral, and it renders a defendant liable for republication that naturally flows from the author's act. Landrum v. Bd. of Comm'rs of Orleans Levee Dist., 95-1591, p. 11 (La.App. 4 Cir. 11/27/96), 685 So.2d 382, 390.
Mr. Melder claims in his petition that Sears published defamatory words about him when it completed a "Reason for Leaving" form and included it in his permanent personnel file. The form stated, "Documented dishonesty. Cash theft by manipulation of detail." Sears also completed a "Separation Notice Alleging Disqualification for Unemployment Benefits." A copy of that form was also placed in his personnel file, and a copy was supplied to the Louisiana Office of Employment Security. It stated, "Discharged: Cash theft by manipulation of detail." Sears also completed an insurance proof of loss form that noted, "Employee Theodore Melder, over a period of eleven months, devised and executed a plan to defraud Sears of cash. He would fraudulently write credit checks, sign `customers' names and use them to cover cash shortages which would result from his `till tapping.'" Lastly, Mr. Melder alleges that Sears republished the defamatory words, either through Mr. Carriere or Officer Bolline, because within days of the incident, everyone in the store knew about the incident.
Sears does not deny that it completed both the "Reason for Leaving" and "Separation Notice" forms and placed them in Mr. Melder's personnel file. However, Sears denies that anyone other than Mr. Melder ever saw the forms, so that publication did not occur.
Mr. Melder offered the affidavit of Glen Gilyot to support his assertion that co-workers knew about his arrest and subsequent dismissal because of some action on *999 the part of Sears. Mr. Gilyot attested that he was working in the adjacent department the night of Mr. Melder's arrest. Some time after Mr. Melder was called to the security department, another co-worker, whose name Mr. Gilyot could not recall, told him that Mr. Melder had been taken from the store in handcuffs. Mr. Gilyot stated that the rumors about Mr. Melder's arrest were rampant, but that was not unusual following such an incident. Mr. Gilyot did not state that he had personally seen Mr. Melder's personnel file, or that anyone in management had discussed the incident with him.
Mr. Melder's deposition testimony and affidavit also were submitted as proof of publication. He stated that a former co-worker, with whom he had lunch after his acquittal, told him that she had been told by a division manager not to associate with Mr. Melder when he was in the store. He does not state whether this co-worker was given any reason why she should not associate with him. This affidavit and deposition testimony, like that of Mr. Gilyot, is based on hearsay.
Mr. Melder has not offered any admissible evidence that would support his allegations of publication of the "Reason for Leaving" or the "Separation Notice" forms.
Mr. Melder also argues that Sears published the defamatory words when it supplied a copy of the "Separation Notice" to the State in connection with his unemployment benefits hearing, and when Mr. Carriere testified at the hearing that Mr. Melder was guilty of theft. Sears counters that such actions are protected by a qualified privilege between an employer and the Office of Employment Security.
In Williams v. Touro Infirmary, 578 So.2d 1006, 1010 (La.App. 4 Cir.1991), this Court discussed the qualified privilege defense:
Under a qualified privilege defense certain statements which might otherwise be deemed defamatory are protected because the circumstances of the communication show an underlying public policy incentive for protection. In effect, assertion of a qualified privilege amounts to rebuttal of the allegation of malice. The public's interest and social necessity mandate that an employer not be unreasonably restricted when required to provide information for a state agency to determine in a quasi-judicial proceeding whether a terminated employee should receive unemployment benefits. The employer must be free to make a complete and unrestricted communication without fear of liability in a defamation suit even if the communication is shown to be inaccurate, subject to the requisites that the communication is in good faith, is relevant to the subject matter of the inquiry and is made to a person (or agency) with a corresponding legitimate interest in the subject matter.
We agree that the qualified privilege defense applies to the facts of this case. Thus, it is Mr. Melder's burden to prove that Sears was in bad faith in connection with its communication with the Office of Employment Security. Mr. Melder argues that bad faith is established because Mr. Carriere accused him of theft based on flimsy suspicions that were inadequately investigated, and then continued to accuse Mr. Melder after he was acquitted.
As discussed above, although Mr. Melder was acquitted, Sears had probable cause to believe he had committed a theft. When Mr. Carriere asked for cooperation in the investigation Mr. Melder refused, which resulted in the termination of his employment as well as his arrest. The accusations by Sears after Mr. Melder's acquittal were made in the context of an unemployment compensation hearing arising from that termination. We thus find that Mr. Melder has failed to produce any evidence that Sears was in bad faith in its communications to the State.
Finally, Mr. Melder claims that Sears has maintained the false information in his personnel file and that his *1000 file is available for anyone to see, with Sears' permission. He also claims Sears has communicated defamatory information to prospective employers, making it impossible for him to obtain employment. He, however, has offered no proof to support the claim that anyone other than the Sears' personnel involved in this investigation has seen his file. In addition, when Mr. Melder was asked at his deposition if he knew of any prospective employers that refused to hire him based on information received from Sears, he stated that he knew of only one. In that case, he said, an insurance agency indicated that because Sears merely furnished his dates of employment, rather than a recommendation regarding his skills and abilities, the agency was not interested in hiring him. However, we find nothing defamatory in the information provided by Sears.
Sears has effectively negated essential elements necessary to Mr. Melder's claim for defamation, and Mr. Melder has failed to provide any factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. Therefore, summary judgment was proper on this claim.

D. Invasion of Privacy:
Louisiana courts have defined the right of privacy as "the `right to be let alone' or `the right to an "inviolate personality."'" Landrum, 95-1591 at p. 14, 685 So.2d at 392. This right embraces four different interests, each of which may be invaded in a distinct manner: (1) the appropriation of an individual's name or likeness for the use or benefit of the defendant; (2) an unreasonable intrusion by the defendant upon the plaintiff's physical solitude or seclusion; (3) publicity that unreasonably places the plaintiff in a false light before the public; and (4) unreasonable public disclosures of embarrassing private facts. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1388 (La.1979); Young v. St. Landry Parish Sch. Bd., 95-1480, p. 3 (La.App. 3 Cir. 5/1/96), 673 So.2d 1272, 1275.
Violation of the right of privacy is actionable only when a defendant's conduct is unreasonable and seriously interferes with another's privacy interest. Jaubert, 375 So.2d at 1389. It is not necessary to prove that the defendant acted with malicious intent. Id. A determination of whether the defendant's actions were reasonable is made by balancing the interests of the plaintiff in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct. Id. A defendant's conduct is reasonable and non-actionable, even though it may slightly invade plaintiff's privacy, if the action is properly authorized or justified by the circumstances. Parish Nat'l Bank v. Lane, 397 So.2d 1282, 1286 (La. 1981).
Mr. Melder claims that Sears committed two of the four types of actionable invasions of privacy. He asserts first that Sears publicized its accusations against him, unreasonably placing him in a false light before the public as well as his former co-workers; and secondly, that Sears unreasonably intruded upon his solitude and seclusion by interfering with his social relationships. These claims are based primarily upon Sears' purported instructions that its current employees were not to associate with Mr. Melder.
The only evidence offered to support this claim is Mr. Melder's affidavit and deposition testimony, previously discussed, recounting his conversation with his former co-worker. Mr. Melder has offered no admissible evidence that Sears advised the co-worker not to associate with him. Furthermore, Mr. Melder testified that the co-worker continued to associate with him, despite the instruction from Sears' management. Thus, even had the co-worker's affidavit been offered, Mr. Melder has admitted that there was no actual interference with his social relationships.
*1001 Mr. Melder also claimed at his deposition that his privacy was invaded when, upon entering the Sears' Lake Forest store, he overheard a manager tell the Security Department to keep him under video surveillance. However, in view of Mr. Melder's apparent awareness that Sears had video cameras throughout the store and that all customers were subject to monitoring, this allegation is insufficient to establish an actionable invasion of privacy.
Again, the evidence presented is insufficient to establish that there is a genuine issue of material fact precluding summary judgment on the invasion of privacy claim. The trial court correctly dismissed this claim.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Mr. Carriere was murdered on the Sears' loading dock sometime after Mr. Melder's criminal trial, but before the subject motion was heard.
[2] At his deposition, Mr. Melder explained that he refused to cooperate because, based on a few prior contacts with Mr. Carriere, "I didn't like the way he worked .... his work was very poorly done."
[3] Because we find probable cause for the arrest, we need not address Mr. Melder's argument that Sears is liable on the basis that Officer Bolline was acting as its employee, rather than the City's, at the time of the arrest.
[4] Mr. Melder testified that although Sears' policy required customers seeking a cash refund to take the credit slip to the cashier window in customer service, the store tolerated the practice of completing a cash refund in the department involved when customer service was busy.