PAUL A. BONIN, Judge.
| ,This civil service appeal is before us on remand from the Louisiana Supreme Court.
Thomas McMasters, a classified employee with the New Orleans Police Department, appeals the decision of the New Orleans Civil Service Commission which upheld the appointing authority’s dismissal of him as a police officer from the NOPD. The Commission found that the appointing authority proved the charge that Mr. McMasters had falsely imprisoned Kyana Boykins on the charge of “prostitution loitering,” that there was cause for discipline, and that termination of Mr. McMasters’s employment was a punishment commensurate with his misconduct.
We have reviewed the evidence before the Commission and conclude that its findings of fact and inferences from those facts are not clearly wrong and are reasonable regarding Mr. McMasters’s conduct with respect to Ms. Boykins. We have detected no error of law in the Commission’s application of the City’s ordinance on prostitution loitering or the principles applicable to “probable cause” 12for arrest, detention, and imprisonment. And finally we conclude that there was no abuse of the Commission’s considerable discretion in upholding the penalty of Mr. McMasters’s dismissal from the police force.
We accordingly affirm the Commission’s decision.[1] We explain our decision in greater detail below.
I
We begin by briefly setting out the procedural history of the investigation of Mr. McMasters, the departmental hearing which resulted in the superintendent of police, Roñal Serpas, terminating Mr. McMasters from the classified employment, the proceedings before the Commis *110 sion, and the course of the judicial review proceedings resulting in the remand to us. We then briefly summarize Mr. McMas-ters’s arguments at this point.
A
This disciplinary proceeding began on November 23, 2009, when Kyana Boykins lodged a complaint against Mr. McMas-ters, her arresting officer, alleging that she had been falsely imprisoned for prostitution in the early morning hours of November 8, 2009.[2] In response to the complaint, the NOPD initiated a formal DI-1 investigation into the allegation.
| .jSergeant Jenario Sanders, of the NOPD’s Public Integrity Bureau, investigated Ms. Boykins’ allegations and prepared a report in which he found, specifically, that on November. 8, 2009, Ms. Boykins and her friend, Quanetia Davis, were walking in the French Quarter on Bourbon Street when they were stopped by two police officers who questioned, handcuffed, and arrested them instead of issuing them summonses in accordance with New Orleans’ Municipal Code Section 54-28(1). The arrest affidavits accuse both women of violating the City’s ordinance against prostitution loitering, which requires, as an essential element of the offense, that the arresting officer know at the time of the arrest that the subjects had been convicted within the prior year of either soliciting for prostitution, prostitution, or a crime against nature. See New Orleans’ Municipal Code Section 54-253. Ms. Boykins’s arrest affidavit, however, fails to state that Mr. McMasters knew that she had any prior convictions. Sergeant Sander subsequently discovered that she had never before been convicted of, let alone arrested for, soliciting for prostitution, prostitution, or a crime against nature at any time prior November 8, 2009. Based upon the provisions of the City’s prostitution loitering section and the women’s arrest and conviction history, Sergeant Sanders submitted a report to the City Attorney’s office for review relative to a possible violation of Municipal Code Section 17271:54-99, false imprisonment.
Ji.B
Although the City chose not to pursue criminal charges,_ the appointing authority initiated disciplinary proceedings against Mr. McMasters. On July 4, 2010, Mr. McMasters received notice that the internal disciplinary investigation had been completed. He subsequently received notice of a disciplinary hearing to be held on March 16, 2011. At the hearing, Mr. McMasters testified on his own behalf and presented testimony from Officer Scallan and Officer Jacob Lathrop, Officer Scal-lan’s partner.
On March 25, 2011, Mr. McMasters received a disciplinary letter stating that the appointing authority had determined that he violated rules relativé to: a) moral conduct, for falsely imprisoning Ms. Boykins; b) performance of duty, for failing to properly verify Ms. Boykins’ record in an arrest for prostitution by loitering; and, c) official information, for falsely indicating on the arrest affidavit that Officer Scallan was working undercover on the night of Ms. Boykins’s arrest. -For violating the *111 rule regarding moral conduct, the appointing authority dismissed Mr. McMasters from the NOPD. For breaking the rule regarding performance of duty, the appointing authority suspended Mr. McMas-ters for ten days. And because it concluded that Officer Scallan was wearing his uniform on the night in question, instead of working undercover in plain clothes, the appointing authority suspended Mr. McMasters an additional ten days for violating the rule regarding official information.
_kP
On March 27, 2011, Mr. McMasters timely appealed his suspensions and dismissal to the Civil Service Commission. The Commission assigned Mr. McMas-ters’s appeal to a hearing examiner who conducted an evidentiary hearing. At the hearing, the appointing authority introduced several exhibits and presented testimony from Sergeant Sanders, Superintendent Serpas, Ms. Boykins, Ms. Davis, Officer Scallan, and cross-examined Mr. McMasters in its ease-in-chief. Mr. McMasters testified on his own behalf and presented the testimony of Officer Billy Tregle, who was his partner on November 8, 2009. The hearing examiner recommended granting Mr. McMasters’s appeal. The Commission, however, denied his appeal and upheld the appointing authority’s discipline on December 20, 2012. The Commission concluded that the appointing authority established by a preponderance of the evidence that it had disciplined Mr. McMasters for cause.
D
On January 22, 2013, Mr. McMasters timely filed a notice of appeal, alleging that the Commission’s judgment was contrary to law and evidence and was arbitrary, capricious, and clearly erroneous. Mr. McMasters makes seven assignments of error on appeal. We have already dealt with one assignment, which argued that the discipline imposed by the appointing authority is an absolute nullity because its investigation did not comply with the minimum standards set forth in the Police Officer’s Bill of Rights. See La. R.S. 40:2531. Because we initially concluded that the investigation did not comply with the minimum time standards, [i;we vacated the Commission’s decision, rendered judgment in Mr. McMasters’s favor, and ordered his reinstatement to his prior position along with restoration of all back pay and emoluments. See McMasters v. Department of Police, 13-0348 (La.App. 4 Cir. 10/9/13), 126 So.3d 684.
The City sought review of our decision with the Louisiana Supreme Court, which granted writs and reversed on the grounds that the time limitation set out in La. R.S. 40:2531 did not apply because the “investigation into Mr. McMasters’s conduct was clearly an investigation of alleged criminal activity.” McMasters v. Department of Police, 13-2634, p. 2 (La.2/28/14), 134 So.3d 1163, 1164. The Supreme Court subsequently remanded the matter so that we could review Mr. McMasters’s remaining assignments of error.[3] See McMasters v. Department of Police, 14-2249 (La.2/13/15), 158 So.3d 826.
E
Mr. McMasters’s appeal raises several intertwined assignments of error. He first *112 argues that his dismissal for violation of moral conduct — which was based upon a finding .that he falsely imprisoned Ms. Boykins — was undertaken without cause. He asserts that the Commission erred in upholding the appointing authority’s dismissal because it failed to establish that he: 1) arrested Ms. Boykins; and 2) had specific intent to falsely imprison Ms. Boy-kins. Mr. McMasters conversely claims that he had legal authority and probable cause to |7arrest Ms. Boykins for prostitution loitering. Mr. McMasters also asserts that the Commission erred in upholding his dismissal because the NOPD’s efficiency was not impaired by his actions and the penalty imposed was not commensurate with the infraction.[4]
II
In this Part we address the precepts which control our review of Mr. McMas-ters’s appeal of the Commission’s decision to uphold the appointing authority’s disciplinary action.
A
The appointing authority — the employer of an employee in the classified civil service — is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. See La. Const, art. X, § 8(A) (“No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing.”); Tugwell v. Plaquemines Parish Government, 14-0657, p. 4 (La.App. 4 Cir. 11/19/14), 154 So.3d 695, 698. New Orleans police officers are included in the protection guaranteed by this provision. See Walters v. Dep’t of Police of New Orleans, 454 So.2d 106, 112 (La.1984).
| ¡/‘Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990). The employee’s failure to perform the task must “affect the efficient operation of public service.” Fisher v. Dept. of Health and Human Resources, Office of Human Devp., 517 So.2d 318, 321 (La.App. 1st Cir.1987). Thus, “[t]he appointing authority must prove by a preponderance of the evidence the occurrence of the complained of activity and that the conduct impaired the efficient operation of the public service.” Narcisse v. Department of Police, 12-1267, p. 7 (La.App. 4 Cir. 3/6/13), 110 So.3d 692, 697 citing Barquet v. Dep’t of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993) (emphasis added).
Mr. McMasters timely exercised his constitutional right to an appeal from the appointing authority’s disciplinary action to the New Orleans Civil Service Commission. See La. Const, art. X, § 12(B). The Commission has “the exclusive power and authority to hear and decide all removal and disciplinary cases.” La. Const, art. X, § 12(B). This “includes the authority to modify (reduce) as well as *113 to reverse or affirm a penalty.” Robinson v. Department of Police, 12-1039, p. 6 (La.App. 4 Cir. 1/16/13), 106 So.3d 1272, 1275. Before the Commission, “the burden of proof on appeal, as to the facts, shall be on the appointing authority.” La. Const, art. X, § 8(A) (emphasis added); Walters, 454 So.2d at 112-113.
Although the Commission’s function is to effectuate constitutional safeguards and protections, equally important is “the appointing authority’s duty to | flundertake disciplinary action against an employee for legal cause that impairs the efficiency of the public service.” Mathieu v. New Orleans Pub. Library, 09-2746, p. 5 (La.10/19/10), 50 So.3d 1259, 1262. The Commission has a duty to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. See Walters, 454 So.2d at 113.
The Commission assigned Mr. McMas-ters’?s appeal to its referee: “[The Commission] may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses.” La. Const. Art. X, § 12(B). After hearing testimony and considering other evidence, the referee issued a written report. Other than the evidentiary proceeding before its referee, the Commission did not conduct any further evidentiary hearings. The three reviewing Commissioners unanimously concurred, in the denial of Mr. McMasters’s appeal.
B
The judicial review function in a matter appealed from a civil service commission is “multifaceted.” Walters, 454 So.2d at 113-114. We review the Commission’s procedural decisions and interpretations of law under our traditional plenary function of insuring procedural rectitude and reviewing questions of law de novo. Walters, 454 So.2d at 113-114. But, because of the constitutional implications arising from the distinct functions of the Commission and of us as a reviewing court, we are more circumspect in our review of other aspects of the Commission’s decision. Id. Thus, in reviewing the Commission’s findings of fact, 110the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. Id.
Specifically with respect to the issues raised by Mr. McMasters in this appeal, “[i]n judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion.” Id. In practice, we afford great deference to the Commission’s ruling supporting the decision of the appointing authority. See Serignet v. Dep’t of Health, 08-0469, p. 10 (La.App. 4 Cir. 5/20/09), 15 So.3d 1019, 1025.
Ill
In this Part we examine the evidence and testimony adduced at Mr. McMas-ters’s hearing before the Commission’s examiner.
At issue in this case are the facts underlying Ms. Boykins’s imprisonment, which was effectuated by way of Mr. McMas-ters’s arrest affidavit, which provides: “[Arrested subject] observed by [undercover officer] M. Scallan approaching and stopping several males in the 200 block of Bourbon. [Arrested subject] approached [undercover officer] but turned and walked *114 away when she observed [arresting officer] approaching.”
Ms. Davis and Ms. Boykins, the arrested subjects, testified at the Commission hearing that they had come to New Orleans’s French Quarter for a “girl’s night out.” They both testified that they were walking on Bourbon Street in |nthe early morning hours of November 8, 2009, when Gast and McMasters arrested them without justification. Ms. Davis testified that Mr. Gast informed her that she was under arrest because an undercover police officer told him that she and Ms. Boykins were soliciting for prostitution. Both Ms. Boykins and Ms. Davis denied the solicitation allegation. Neither Ms. Davis nor Ms. Boy-kins, moreover, had any prior arrests or convictions for prostitution. The two women, nevertheless, were handcuffed and left sitting on the curb until they were taken to Central Lockup, where they spent the weekend until they were released the following Monday.
Officer Scallan, the alleged undercover officer, testified that on November 8, 2009, he was patrolling Bourbon Street on foot with his partner, Officer Jacob Lathrop. He testified that he did not recall whether he had been approached by Ms. Davis or Ms. Boykins on that night. Although he could not specifically recall, he believed that he was working in uniform, as opposed to working undercover. Officer Scallan based his opinion on the fact that he had reviewed an incident report prepared on the morning of November 8, 2009, which detailed him and his partner’s 2:00 a.m. response to a report of a stolen wallet. ' Officer Scallan reasoned that he would not have been working undercover on November 8, 2009, because the report showed clearly that he was working with Officer Lathrop, his partner, at the time. Significantly, Ms. Boykins’s arrest affidavit asserts that she committed the crime of prostitution loitering at approximately 2:00 a.m. on the morning of November 8, 2009.
| 12Mr. McMasters testified that on November 8, 2009, he was assigned to the NOPD’s Eighth District and tasked with patrolling the French Quarter’s Bourbon Street Promenade. While on patrol with Officer Billy Tregle, his partner, he came upon Mr. Gast who had already stopped Ms. Boykins and Ms. Davis. Mr. Gast asked Mr. McMasters to assist him by filling out an arrest affidavit for Ms. Boy-kins. Mr. McMasters complied by preparing an arrest affidavit using information provided to him solely by Mr. Gast.[5]
Our review of Mr. McMasters’s affidavit shows that it is identical to Mr. Gast’s. Mr. McMasters testified that he had no reason to question the validity of the information provided to him by Mr. Gast, who was in control of the scene. He also noted that police officers working the Bourbon Street Promenade regularly assist one another with arrests and rely upon factual scenarios provided by other officers when filling out arrest affidavits. Mr. McMas-ters, therefore, argues that the onus was solely upon Mr. Gast to determine that probable cause and all elements of the crime of prostitution loitering were present, including the existence of prior convictions.
Mr. McMasters admitted at his hearing to being generally familiar with the elements of the crime of prostitution loitering. He, specifically, acknowledged that one element of the crime is that the arresting officer must know that the charged individual had a prior conviction in the *115 year preceding the arrest for prostitution 11sloitering.[6] Mr. McMasters nevertheless admitted that when he filled out Ms. Boy-kins’s arrest affidavit he did not know whether she had any applicable prior convictions within the preceding year. He likewise admitted that when he filled out Ms. Boykins’s arrest affidavit no one had told him whether she had any prior convictions. Similarly, he conceded that he failed to run Ms. Boykins’s name through the NOPD’s MOTION computer system, which would have informed him that she had no prior convictions or arrests for prostitution, when he filled out Ms. Boy-kins’s arrest affidavit.[7] He nevertheless testified that he believed that he had legal cause to arrest Ms. Boykins at the time based upon the information provided to him by Mr. Gast.
Officer Jenario Sanders, of the NOPD’s Public Integrity Bureau, also testified at Mr. McMasters’s hearing concerning his investigation of Ms. Boykins’s complaint as well as his understanding of the' City’s prostitution loitering ordinance. With respect to the ordinance, Officer Sanders stated: “For prostitution loitering a person has to pander, try to solicit prostitution from an individual. And the loitering portion also, in connection with the loitering portion also they have to have a previous conviction within a year for prostitution, crimes against nature, and I believe carnal knowledge.”
Officer Sanders testified that, in connection with his investigation, he contacted the office within the NOPD’ that manages its MOTION computer |udatabase. Officer Sanders explained that this database catalogs an individual’s arrests and other interactions with the police. His investigation discovered that Ms. Boykins’s name had not been checked for prior arrests or convictions on the morning of November 8, 2009. He likewise noted that Ms. Boy-kins’s name had not been checked at all in the year proceeding November 8, 2009, and that she had never been arrested or convicted for prostitution at any time prior to the arrest in question. Officer Sanders also identified Ms. Boykins’s arrest register, which lists her arresting officer as Mr. McMasters. He further testified that he recommended sustaining Ms. Boykins and Ms. Davis’s false imprisonment complaint because Mr. McMasters and Mr. Gast “never took the time to even look into the fact that these girls had been arrested for prostitution loitering.”
IY
A
In this Part we discuss Mr. McMasters’s assertion that the Commission erred when it concluded that the appointing authority disciplined him for cause. The Commission affirmed the appointing authority’s conclusion that Mr. McMasters violated its rules regarding moral conduct by falsely imprisoning Ms. Boykins. Mr. McMasters asserts that the Commission’s conclusion is erroneous because the appointing authority failed to prove that he: 1) arrested Ms. Boykins; and 2) had specific intent to commit false imprisonment. Conversely, Mr. McMasters’s claims that the facts establish that he had legal authority and probable cause to arrest Ms. Boykins. We disagree with Mr. McMasters and instead conclude that l1fithe Commission was not clearly wrong, or manifestly erroneous, when it found that the appointing authority proved by a preponderance of the evidence that *116 Mr. McMasters falsely imprisoned Ms. Boykins. We thus conclude that Mr. McMasters was disciplined for legal cause.
1
The City’s false imprisonment ordinance decrees that it “shall be unlawful for any person to commit the crime of false imprisonment” and defines the offense as “the intentional confinement or detention of another, without his consent and without legal authority.”[8] New Orleans Municipal Code of Ordinances Section 54-99, False Imprisonment.[9] There is, however, scant jurisprudence discussing the crime of false imprisonment. See, e.g., State v. Jones, 48,624, p. 9 (La.App. 2 Cir. 1/22/14), 132 So.3d 505, 511, which notes merely that “[f]alse imprisonment is the intentional confinement or detention of another, without his consent and without proper legal authority.” Jurisprudence discussing the tort of false imprisonment indicates that a civil cause of action comprises two essential elements: “(1) detention of a person; and (2) the unlawfulness of such detention.” Hays v. Hansen, 96-1903, p. 2 (La.App. 4 Cir. 3/19/97), 692 So.2d 3, 5. Nevertheless, probable cause to arrest “is an absolute defense to any claim against police officers | ¶ ñfor wrongful arrest, false imprisonment, or malicious prosecution.” Brown v. City of Monroe, 48,764, p. 6 (La.App. 2 Cir. 2/26/14), 135 So.3d 792, 796.
2
Mr. McMasters first assails the false imprisonment charge by arguing that the Commission erred in concluding that he arrested Ms. Boykins. Citing to Melder v. Sears, 98-0939, p. 4 (La.App. 4 Cir. 3/31/99), 731 So.2d 991, 995, which indicates that an arrest occurs when one person takes another into custody and there is an actual restraint of that person, Mr. McMasters argues that Ms. Boykins was in fact arrested by Mr. Gast, who detained and handcuffed her. He therefore claims that his actions — the mere copying of Mr. Gast’s arrest affidavit charging Ms. Davis with prostitution loitering — were taken solely out of assistance to a fellow officer. We cannot agree with Mr. McMasters’s characterization of his actions. Ms. Boy-kins was taken into custody and imprisoned solely upon the basis of Mr. McMas-ters’s affidavit, which in this instance served to institute criminal proceedings against Ms. Boykins.
The Louisiana Code of Criminal Procedure provides that “[a] criminal prosecution is brought in the name of the state in a court of criminal jurisdiction, for the purpose of bringing to punishment one who has violated a criminal law.” La. C.Cr.P. art. 381. The Code, likewise, indicates that “[a] prosecution for violation of an ordinance and other criminal prosecutions in a city court shall be instituted by affidavit or information charging any offense.” La.C.Cr.P. art. 382 |17B(2).[10] For purposes of the Criminal Code, an affidavit “is a written accusation of crime made under oath and signed by the affiant. It must be filed in open court in a court *117 having jurisdiction to try the offense, or in the office of the clerk thereof.” La. C.Cr.P. art. 385.
In the present case, Ms. Boykins was charged and imprisoned pursuant to an affidavit in the form of a summons signed by Mr. McMasters. A summons “is an order in writing, issued and signed by a magistrate or a peace officer in the name of the state, stating the offense charged and the name of the alleged offender, and commanding him to appear before the court designated in the summons at the time and place stated in the summons.” La.C.Cr.P. art. 208.
Under normal circumstances, when a New Orleans police officer concludes that an individual has violated a city ordinance, such as prostitution loitering, he is directed to issue the offending person a summons to appear in Municipal Court and answer the charge. See Sec. 54-28, Summons by officer instead of arrest and booking (“An officer shall issue a written summons and may not make a custodial arrest when citing a person solely for a violation of this chapter.”). However, this same provision indicates that an officer may make a custodial arrest of the individual if he concludes that one or more of the following factors are present: 1) the person does not possess identification issued by any municipal, state, territorial, federal, or other governmental authority within the United States; 2) the person makes a statement that indicates an intent to disregard the summons or refuses to | lssign the summons; 3) the person acts in a violent or destructive manner or makes a statement indicating that he or she intends to inflict injury to self or another or damage to property; 4) the person is a habitual offender,' defined as any individual with a criminal history of two or more felony convictions or five or more felony or municipal arrests for any offense; or 5) based on the circumstances, an officer determines that it is absolutely necessary to make an arrest. See Sec. 54-28(1).
Subsection (4) of this provision further dictates that an officer is to “specify the circumstances falling within subsection (1)” on the affidavit when he “effectuates a custodial arrest solely' for a violation of the Code of the City of New Orleans” in lieu of merely issuing a written summons. We have examined Ms. Boykins’s affidavit, which was introduced into evidence at the Commission’s hearing, and discovered that Mr. McMasters failed to give any reason as justification for Ms. Boykins’s arrest.
Mr. McMasters’s affidavit, therefore, had the effect of instituting criminal proceedings against Ms. Boykins for prostitution loitering. His affidavit, likewise, served as the procedural vehicle by which she was arrested and imprisoned. We cannot agree with his characterization of his actions as amounting to no more than a ministerial aid to Mr. Gast. And because he failed to specify on the affidavit the reason for her arrest we cannot say that Ms. Boykins’s imprisonment was justified by virtue of Section 54-28. The Commission, therefore, was not clearly wrong when it concluded that Mr. McMasters arrested Ms. Boykins.
Iii)3
Mr. McMasters next asserts that the Commission erred in sustaining the charge of false imprisonment because the appointing authority failed to prove that he had specific intent to falsely imprison Ms. Boykins. We disagree with his assertion that specific intent is an element of the City’s false arrest ordinance.
First, we observe that Mr. McMasters cites to no authority in support of his assertion that the City’s ordinance against false imprisonment is a specific intent crime. While he relies upon two cases which discuss the civil tort of false impris *118 onment, neither case indicate that specific intent is an element of either the tort or the crime of false imprisonment. See Kyle v. New Orleans, 353 So.2d 969, 971 (La.1977); Melder, 731 So.2d at 995. We have, moreover, on prior occasion indicated that civil false imprisonment is not an intentional tort. See Prisk v. Palazzo, 95-1475, pp. 4-5 (La.App. 4 Cir. 1/19/96), 668 So.2d 415, 417 (“The civil cause of action for false imprisonment requires proof of restraint without color of legal authority ... There is no requirement of proving that the confinement be intentional.”). (Citations omitted.)
Second, we observe that the City’s Code of Ordinances makes clear that false imprisonment is a general intent crime. New Orleans Municipal Code of Ordinances Section 54-12 states clearly that “[I]n the absence of qualifying provisions, the terms ‘intent’ and ‘intentional’ have reference to general criminal intent.” Section 54-99, as noted, defines false imprisonment as “the intentional confinement or detention of another, without his consent and without legal 12nauthority.” (Emphasis added.) The City’s prohibition against false imprisonment, therefore, is a general intent crime.[11] Contrary to Mr. McMas-ters’s assertion, the appointing authority was not required to prove that he acted with specific intent to falsely imprison Ms. Boykins.[12]
4
Mr. McMasters alternatively claims that the appointing authority lacked cause to punish him because the facts establish that his arrest of Ms. Boykins was made in good faith and with legal authority based upon information provided solely by Mr. Gast that established probable cause for an arrest.[13] While we do not disagree with the general proposition that a police officer may rely upon information provided by another to make an arrest, we disagree with his assertion that Mr. Gast’s information established probable cause to arrest Ms. Boykins.
The U.S. Supreme Court has long held that the warrantless arrest of a suspect based on probable cause is reasonable under the Fourth Amendment. See United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Article 213 of the Louisiana Code of Criminal' Procedure permits officers to execute war-rantless arrests of persons when “[t]he peace officer has reasonable cause to believe that the person to |21be arrested has committed an offense, although not in the presence of the officer.” See La.C.Cr.P. art. 213 A(3). “Probable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man *119 of ordinary caution in the belief that the accused has committed an offense.” State v. Surtain, 09-1835, p. 7 (La.3/16/10); 31 So.3d 1037, 1043.
Probable cause is a non-technical concept, weighing “factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This standard does not require that “the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances.” State v. Sylvester, 02-0743, p. 3 (La.App. 4 Cir. 12/11/02); 834 So.2d 1166, 1168. The concept is fluid, “turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.” Gates, 462 U.S. at 232, 103 S.Ct. 2317. “The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate basis for the arrest of a person.” Sylvester, 02-0743, p. 5; 834 So.2d at 1169 (citing State v. Fisher, 97-1133, p. 7 (La.9/9/98); 720 So.2d 1179, 1184).
“The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or near a preponderance standard demands.” State v. Lawrence, 02-0363, p. 3 (La.App. 4 Cir. 5/8/02); 817 So.2d 1216, 1220. Our review is “based on an assessment of the collective knowledge possessed by all of the police involved in the investigation....” State v. Pratt, 08-1819, p. 1 (La.9/4/09); 16 So.3d 1163, 1164 (per curiam). The question before us, therefore, is “ ‘whether these historical facts, viewed from, the standpoint of an objectively reasonable police officer, amount to’ probable cause.” Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citing Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)) (emphasis added).
In the case before us, we cannot say that the facts — all of which were provided to Mr. McMasters by Mr. Gast — amount to probable cause to arrest Ms. Boykins for the City’s crime of prostitution loitering. New Orleans’ Municipal Code Section 54-253(c) provides that “a person is guilty of prostitution loitering by remaining in a public place, when he or she has been convicted within the previous one year within the present knowledge of the arresting officer of soliciting for prostitution, prostitution, or a crime against nature, and engages in any of the following conduct: ... (2) Repeatedly beckons to, stops, or attempts to stop or engage passersby in conversation.” This section further provides that the phrase “[k]nown prostitute or panderer means a person, who within one year previous to the date of arrest for violation of this section, has within the present knowledge of the arresting officer been convicted of soliciting for prostitution, prostitution, or a crime against nature.” Section 54-253(c).[14] This section *120 | ^additionally indicates that “[p]resent knowledge of the arresting officer means information known to the arresting officer at the time the arrest is made for violation of this section.” Section 54 — 253(b).
Although Mr. McMasters admitted that present knowledge of such prior conduct was an essential element of the charge, he also acknowledged that he had no knowledge whatsoever that Ms. Boykins had been convicted, let alone arrested, at any time of soliciting for prostitution, prostitution, or a crime against nature. Although access to such knowledge was easily available to both Mr. Gast and Mr. McMasters, via the NOPD’s MOTION computer database, neither officer took the simple step of using his police radio to inquire into Ms. Boykins’s conviction or arrest history.
Mr. McMasters’s arrest affidavit reflects this salient fact. While it charges Ms. Boykins with violating the City’s prostitution loitering ordinance, the arrest affidavit fails to state that Mr. McMasters had present knowledge that she had been convicted within the previous one year of soliciting for prostitution, prostitution, or a crime against nature. Regardless of Mr. McMasters’s knowledge, the arrest affidavit does not support the charge leveled against Ms. Boykins. Contrary to his claim, Mr. McMasters did not possess probable cause to arrest Ms. Boykins for _J_24prostitution loitering because the arrest affidavit — which served to institute criminal proceedings — does not support the charge.
We, accordingly, affirm the Commission’s conclusion that the appointing authority had sufficient legal cause to discipline Mr. McMasters.
B
In this Part we discuss Mr. McMasters’s contention that the Commission erred in upholding his dismissal because the NOPD’s efficiency was not impaired by his actions and the penalty imposed was not commensurate with the infraction. We think it important to first note that the appointing authority also dismissed Mr. Gast from service after concluding that he falsely imprisoned Ms. Davis. The Commission upheld this finding and we, upon Mr. Gast’s appeal, concluded that its ruling was neither arbitrary nor capricious. See Gast, 13-0781, p. 7 (La.App. 4 Cir. 3/13/14), 137 So.3d at 735.
In our analysis of Mr. McMas-ters’s argument we must recognize, as the Louisiana Supreme Court has recently reminded us, that neither the Commission nor a reviewing court should “second-guess” an appointing authority’s decisions. See Lange v. Orleans Levee District, 10-0140, p. 17 (La.11/30/10), 56 So.3d 925, 936. See also Sumling v. Department of Health, 14-1423, pp. 2-3 (La.11/7/14), 152 So.3d 134, 136. The Commission and a reviewing court may intervene only when the appointing authority’s decisions are arbitrary and capricious or characterized by an abuse of discretion. Lange, 10-0140, p. 17, 56 So.3d at 936. Moreover, neither the Commission nor the reviewing court may serve as a de facto | gr,pardon board. Lange, 10-0140, p. 17, 56 So.3d at 936. “[S]ympathy is not a legal standard.” Id.
We are cognizant of the principle that dismissal from permanent employ *121 ment is the most extreme form of disciplinary action that can be taken against a classified or city employee. See Hills v. New Orleans City Council, 98-1101, pp. 6-7 (La.App. 4 Cir. 12/9/98), 725 So.2d 55, 58. Roñal Serpas, the NOPD’s Superintendent at the time, testified before the Commission’s hearing examiner that he decided to dismiss Mr. McMasters because the “infringement of a citizen’s right to be free from police misconduct that resulted in their physical arrest is clearly an efficient effective question of how the Police Department operates and could not stand.” In discussing his thought process, Superintendent Serpas noted: “We rely on and demand that our police officers are fully aware of what decisions they’re making in the information that’s available to them, and expect that they have exhausted all information available to them before they make a decision, particularly a decision involving an arrest.” With respect to Mr. McMasters’s case, Superintendent Serpas concluded: “In this case, there was evidence in my mind, that Mr. McMasters did not fulfill his duties in that regard and, as a result, a citizen was denied their freedom through an arrest that we do not believe was an appropriate arrest.”
In affirming the appointing authority’s discipline, the Commission concluded that Mr. McMasters falsely imprisoned Ms. Boykins by signing an arrest affidavit that patently failed to establish probable cause for the arrest. The |2fievidence adduced before the hearing examiner bears out this conclusion. Mr. McMasters admitted that his arrest affidavit for Ms. Boykins was copied verbatim from Officer Gast’s arrest affidavit for Ms. Davis. Mr. McMasters nevertheless knew that the crime required that Ms. Boykins have a prior conviction, yet admitted to having no present knowledge whatsoever that Ms. Boykins had any prior convictions. Mr. McMasters knew that such information was easily obtainable via the NOPD’s MOTION computer database, yet he failed to seek out such knowledge.
As a result of Mr. McMasters’s actions and inactions, Ms. Boykins'was falsely arrested and jailed. Based upon the evidence presented at Mr. McMasters’s hearing it is evident that the Commission’s decision, which ratified the appointing authority’s decision to terminate his employment, was not arbitrary and capricious or characterized by an abuse of discretion. We, accordingly, conclude that the Commission correctly found that Mr. McMas-ters’s discipline was commensurate with the infraction.
DECREE
We affirm the decision of the Civil Service Commission for the City of New Orleans terminating Thomas McMasters’s employment with the New Orleans Police Department.
AFFIRMED
LOMBARD, J., concurs with reasons.
LOBRANO, J., concurs in the result.

. Because of our disposition on this issue, we have pretermitted consideration of Mr. McMasters's complaints regarding his ten-day suspension for violating the rule regarding performance of duty because the appointing authority failed to establish that he was obligated to run Ms. Boykins’s name through the NOPD’s computer system and another ten-day suspension for violating the rule regarding official information. Even were we to reverse the Commission with respect to these findings Mr. McMasters would be no less dismissed from the NOPD.

. Ms. Boykins’s friend Quanetia Davis, who was also arrested along with Ms. Boykins on the night in question, filed a similar complaint against Beau Gast, her arresting officer. As with Mr. McMasters, the NOPD pursued disciplinary proceedings against Mr. Gast. Mr. Gast was also dismissed from the NOPD and the Commission affirmed his dismissal. Mr. Gast appealed the Commission’s ruling and we affirmed. See Gast v. Department of Police, 13-0781 (La.App. 4 Cir. 3/13/14), 137 So.3d 731. See Part IV-B, post, for further discussion of Mr. Gast’s dismissal.

. Arguing that Mr. McMasters’s request for consideration of the pretermitted assignments of error had either been untimely or already rejected here and in the Supreme Court, the City objects to our consideration of them. Because the Supreme Court, which, has general supervisory authority over us, has directed that we return to the appeal, we will not address the City's objection further herein. See La. Const, art. 5, § 5.

. Mr. McMasters also asserts as error the fact that the Commission disregarded the hearing examiner’s recommendation. While he discusses the hearing examiner’s findings at length, he fails to brief this issue as an assignment of error. Accordingly, we do not consider that assignment of error. See Uniform Rules, Courts of Appeal, Rule 2-12.4 ("All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.’’). We note, however, that we have already concluded that "a hearing examiner is appointed 'to take testimony’ and has no decisional authority.” Morgan v. Chief Administrative Office, 455 So.2d 1242, 1244 (La.App. 4th Cir.1984). See also Evangelist v. Dep’t of Police, 08-1375, p. 16 (La.App. 4 Cir. 9/16/09), 32 So.3d 815, 845 n. 5 (on rehearing).

. Mr. McMasters denied speaking with Officer Scallan at any time about Ms. Boykins and Ms. Davis.

. Officer Tregle, who testified on Mr. McMas-ters’s behalf, also stated that prior convictions are an element of the crime of prostitution soliciting.

. Officer Sanders testified at the hearing that MOTION was. an acronym that stands for "Mobile Operating Transmission Information Networking.”

. The penalty provision of this ordinance provides that whoever "commits the crime of false imprisonment shall be fined not more than $200.00, or imprisoned for not more than six months, or both.” Section 54-99, False imprisonment.

. The City's ordinance is substantially similar to the state crime of false imprisonment, which criminalizes "the intentional confinement or detention of another, without his consent and without proper legal authority.” La. R.S. 14:46.

."City court” means "a city, town, village, or other municipal court, with criminal jurisdiction.” La.C.Cr.P. art. 931(2).

. The City’s Code indicates that general criminal intent "is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have averted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.” Section 54-11, Criminal intent.

. We note that Mr. McMasters does not allege in the alternative that the appointing authority failed to prove that he lacked general intent.

.Mr. McMasters’s argument on this point does not rely upon the general principle of justification found in La. R.S. 14:18, which, among other things, provides: "The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed under thé following circumstances: ... (2) When the offender’s conduct is a reasonable accomplishment of an arrest which is lawful under the Code of Criminal procedure.”

. It cannot be overlooked that the inclusion of this objectively ascertainable requirement as an essential element of the offense undoubtedly resulted from the lawmaker’s (in this case the New Orleans City Council) desire to avoid a challenge to the constitutionality of this loitering ordinance. Loitering ordinances, like vagrancy or begging ordinances, are often drafted so that they would be enforceable "only at the whim of any police officer of that city.” Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). Such vague and overbroad ordinances are offensive to the *120 constitution by allowing police officers such power. See Scott v. District Attorney, Jefferson Parish, State of Louisiana, 309 F.Supp. 833 (E.D.La., 1970) (Rubin, J.). Thus, we view, in part, Mr. McMasters’s disregard of acquiring any evidence of this essential element of the offense within die context of the evil which this very element was designed to extinguish: arbitrary police conduct.