JAMES F. MCKAY III, CHIEF JUDGE
Plaintiff, Dr. Lucille Perry ("Dr. Perry"), appeals the May 30, 2017 ruling of the Civil Service Commission for the City of New Orleans ("CSC"), which determined that Dr. Perry was not owed any back pay upon her reinstatement to employment due to an offset from her interim earnings. Finding no error in the CSC's ruling, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The facts of this case are taken from the appeal Perry v. City of New Orleans , 2011-0901, pp. 1-4 (La. App. 4 Cir. 2/1/12), 104 So.3d 453, 454-55. (" Perry I ").
Appellant [Dr. Perry] began working for the City of New Orleans, Department of Health, as a classified employee with permanent status beginning April 17, 1988, with the class code C5317 and the title of "Senior Environmental Technician." Subsequently, Appellant's class code was changed to C5311, titled "Environmental Tech 1" and then to an "Environmental Specialist III." According to Appellant's testimony, her job duties included handling "crisis cases" with the housing and health inspectors, typically involving elderly abuse, abandoned children, and other social issues. (footnote omitted).
*119 On March 30, 1998, Appellant was transferred from the Department of Health to Municipal Court, with the new classified position of "Medical and Social Services Coordinator," class code C0295. Appellant's workplace also changed from City Hall to Municipal Court, and her new Appointing Authority was George P. Wells, the Municipal Clerk of Court. Appellant worked in victim services in connection with domestic violence cases and held the title "Victim Services Coordinator."
On January 6, 2003, Appellant's supervision shifted from Municipal Court to the Department of Law. According to Appellant's testimony at the hearing, the determination was reached that it was a conflict of interest for the Victim Services Coordinator to be within Municipal Court because it could reflect a potential bias of the court; therefore, the position was transferred to the Department of Law. Appellant asserts that her job duties remained the same. According to the Civil Service Commission's decision, the need for the administrative transfer was precipitated by a change in funding, as the salary for Appellant's position was funded by a grant which was transferred from the budget of the Municipal Court to the Department of Law.
Also on this date, January 6, 2003, a transfer document was executed, wherein Appellant's civil service status was changed from classified to unclassified, with the new job title of "Asst. Attorney I." According to the testimony of the human resources director/legal budget and finance manager, Vanessa Caliste Swafford, "Attorney I" was a newly created position under class code U0020AA ("U" representing "unclassified"). Appellant denies ever seeing this transfer document and submits that her actual job duties never changed. There is no provision for an employee signature anywhere on the transfer document. (footnotes omitted).
On April 1, 2007, Appellant's position was changed within the Department of Law to the position of "Urban Policy Specialist," class code U0167.
In the fall of 2008, Appellant was disciplined for an incident that occurred in Municipal Court on July 31, 2008, between Appellant and a Municipal Court Judge. As a result of this incident, Appellant was suspended for one week without pay, and received a disciplinary letter dated September 10, 2008, from City Attorney Penya Moses-Fields. The disciplinary letter included the language: "Lastly, as a reminder, members of the unclassified staff serve at the pleasure of the Administration...." Appellant signed the letter in the receipt/acknowledgement section, which was dated September 10, 2008. Appellant did not appeal her discipline.
Appellant continued to work in the Department of Law. On January 27, 2010, Appellant received a letter of termination from City Attorney Penya Moses-Fields, her Appointing Authority, advising of the lack of funding for her position and her termination date of February 12, 2010. Appellant asserts that this was the first time she learned that her position was unclassified.
Appellant appealed her termination, and the Appointing Authority filed a Motion for Summary Disposition. On June 21, 2010, the Civil Service Commission issued an order stating that the matter would be referred to the Hearing Examiner "for the purpose of engaging in fact-finding regarding Appellant's appointment to and official status in the classified service during the term of her employment with the City of New Orleans and the facts and propriety of the changes made thereto." The order further *120 provided that upon issuance of the Hearing Examiner's report, the matter would be re-submitted to the Civil Service Commission.
On August 19, 2010, the Hearing Examiner conducted a fact-finding hearing. On January 17, 2011 the Hearing Examiner issued a report recommending that Appellant's appeal should be denied. In the report, the Hearing Examiner determined that Appellant never questioned her status as an unclassified employee until after she received notice of her termination, and that evidence was presented of Appellant's actual knowledge of her unclassified status via the September 10, 2008 disciplinary letter, which was signed by the Appellant and was not appealed. The Hearing Examiner noted that Appellant testified that she did not notice the mention of her unclassified status in the disciplinary letter and insisted that she was unaware of her unclassified status until she received notice of her termination. The Hearing Examiner concluded that because all positions within the Law Department are unclassified, Appellant knew or should have known that her position was unclassified prior to her termination.
On May 4, 2011, the Civil Service Commission denied Appellant's appeal with written reasons substantially similar to those detailed by the Hearing Examiner. This appeal followed.
In Perry I , this Court reversed the CSC, finding that Dr. Perry was wrongfully deprived of her classified civil service status without due process. Id. at p. 7, 104 So.3d at 457. Citing La. R.S. 49:113[1] , we further stated that Dr. Perry "shall be entitled to reinstatement effective February 12, 2010, with all emoluments, and is also entitled to full back pay with a set-off for any wages earned in private employment ." (emphasis added). Id. at p. 8, 104 So.3d at 458.
The matter was remanded to the CSC to determine the amount of back pay owed Dr. Perry after considering any wages and salaries earned in private employment during the period of separation.[2] Id. at p. 10, 104 So.3d at 458.
On remand, the CSC issued a Back Pay Order on June 3, 2014, providing, in pertinent part, as follows:
1. The Appointing Authority is ordered to calculate all back pay including all pay increases from the period of termination until reinstatement based upon the last salary received as a classified employee.
2. The Appointing Authority is ordered to deduct from the calculated back pay all interim earnings. Interim earnings include all gross pay received as an employee and/or independent contractor during the relevant period in excess of what the Appellant would have earned moonlighting if her employment with the Appointing Authority had not terminated. The parties will use the 12 month period prior to the Appellant's termination to determine the amount of pay the Appellant would *121 have earned moonlighting. (emphasis added).
The City filed a writ application from the CSC's June 3, 2014 ruling, arguing that pursuant to La. R.S. 49:113, the City is entitled to an offset for all of Dr. Perry's gross interim earnings. See Perry v. City of New Orleans Law Department , unpub., 2014-1094, (La. App. 4 Cir. 12/15/14), ("Perry II" ). In Perry II , we determined that the CSC's Back Pay Order did not use the statutory language cited by this Court in Perry I . More specifically, we held that the language used in the Back Pay Order "is improper as it allows for a credit or set-off for a portion of wages earned, rather than all interim gross pay as provided for in the statute." (emphasis in original). The matter was remanded to the CSC for a determination of back pay in compliance with the orders of this Court.
The matter was brought back before the CSC on May 15, 2017. In a ruling rendered May 30, 2017, the CSC considered all interim earnings, and concluded that Dr. Perry "is not entitled to back pay as her interim earnings between February 10, 2010 and April 29, 2013 completely offset an award of back pay." The CSC calculated that Dr. Perry's back pay for the time period at issue was $144,063.00. The total amount of interim earnings from her second job was calculated at $153,165.30. Thus, because Dr. Perry's interim earnings exceeded her back pay, the CSC determined that no back pay was owed. Dr. Perry's timely appeal followed.
LAW AND ANALYSIS
Standard of Review:
In a CSC case, a "multifaceted" standard of review applies. McMasters v. Dep't of Police , 2013-0348, p. 9 (La. App. 4 Cir. 5/15/15), 172 So.3d 105, 113 (citing Walters v. Dep't of Police of New Orleans , 454 So.2d 106, 113-14 (La. 1984) ). Summarizing the multifaceted standard of review, this Court in Russell v. Mosquito Control Bd. , 2006-0346, pp. 7-8 (La. App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40, stated as follows:
First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. See Stern v. New Orleans City Planning Comm'n , 03-0817, pp. 5-6 (La. App. 4 Cir. 9/17/03), 859 So.2d 696, 699-700.
Assignment of Error:
In her only assignment of error, Dr. Perry asserts that the CSC erred in using the interim earnings from her secondary job to offset her back pay. For the reasons set forth below, we find no merit in this assignment of error.
Dr. Perry argues that her second job, held for years prior to and throughout the termination period, should not be counted to offset her back pay. Dr. Perry explains that for years before she was terminated from her classified position, she held a second job as a counselor at Orleans Parish *122 Prison; a position she has continued to hold. Thus, Dr. Perry was earning two salaries at the time of her termination. She maintains that the CSC's ruling penalizes her by reducing her to one income during the period of separation.
Dr. Perry submits that La. R.S. 49:113 was never intended to be penal in nature. She argues that the purpose of back pay pursuant to La. R.S. 49:113 is to make her whole. In support of this argument, Dr. Perry cites Hebbler v. New Orleans Fire Department , 310 So.2d 113 (La. 1975).
In Hebbler, the Court held that a reinstated firefighter was entitled to state supplemental pay that was withheld during the period of wrongful termination. The Court reasoned that the state supplemental pay was part of a firefighter's salary and wages within the intendment of R.S. 49:113, and thus, compensable as back pay. Hebbler, 310 So.2d at 115. The Court recognized that the legislative intent of La. R.S. 49:113 was "to make the reinstated employee whole." Id.
We find Hebbler to be distinguishable from the present case. Hebbler dealt with statutorily imposed state supplemental pay to all firefighters, which was part of the firefighter's salary. The pay at issue in the present case is supplied by Dr. Perry's secondary employer, unrelated to her position with the City.
The City argues that the CSC's ruling represents a proper application of Perry I , which held that pursuant to La. R.S. 49:113, the City is entitled to offset all gross interim earnings during the period of separation. We agree.
In considering La. R.S. 49:113, this Court has consistently held that an illegally discharged city employee is entitled to back pay, minus a credit for all monies received by the employee from other employment during his separation from the City. Carroll v. New Orleans Police Dept. 2004-0122, p. 4 (La. App. 4 Cir. 9/29/04), 885 So.2d 636, 639 (citing Perkins v. Sewerage and Water Board, 95-1031 (La. App. 4 Cir. 2/29/96), 669 So.2d 726, 730 ).
The issue of offset was considered by this Court in Perry I , and the details concerning Dr. Perry's second job were known to the Court at the time. Within that context, we remanded to the CSC for a calculation of back pay after taking into consideration any wages and salaries earned by Dr. Perry in private employment during the period of separation. In Perry II, we again addressed the issue of offset, finding that the CSC erred in failing to offset all of Dr. Perry's interim earnings as provided for in La. R.S. 49:113. On remand from Perry II , and in line with this Court's directive, the CSC offset all of Dr. Perry's interim earnings in calculating her back pay. We find no error in the CSC's ruling.
CONCLUSION
For the foregoing reasons, we find no error in the CSC's ruling, which determined that after considering her interim earnings, Dr. Perry is not entitled to back pay. Accordingly, we affirm.
AFFIRMED

La R.S. 49:113 provides: "Employees in the state or city civil service, who have been illegally discharged from their employment, as found by the appellate courts, shall be entitled to be paid by the employing agency all salaries and wages withheld during the period of illegal separation, against which amount shall be credited and set-off all wages and salaries earned by the employee in private employment in the period of separation."

On application for rehearing, because the record indicated that Dr. Perry's classified position no longer existed, we remanded to the CSC to reinstate Dr. Perry to a comparable position.